David F. Lee, Jr., J.
The plaintiff Town of Preble seeks judgment in this action against the defendants “ enjoining them from in any manner promoting or conducting any open air band concert, rock festival or similar event at the premises occupied by the defendant corporation or elsewhere in the Town of Preble ’ ’.
A motion for a preliminary injunction was brought on by an order to show cause at Special Term on February 25, 1970. A preliminary injunction was granted to the extent that defendants were enjoined “ from advertising or selling tickets for any rock festival or other outdoor band concert to be held at or about their premises known as the Song Mountain Ski Center in the Town of Preble, Cortland County”.
The action came on for trial on March 4, and at that time plaintiff, by way of an order to show cause, moved for summary judgment. The court reserved decision on plaintiff’s motion. A motion was then made on behalf of the individual defendants for the dismissal of the plaintiff’s complaint as to them, and on that motion decision was reserved. The action was then tried before the coiirt without a jury.
The plaintiff’s complaint alleges that the defendant Song Mountain, Inc. owns and occupies land in the Town of Preble, and did own and occupy land in the town prior to the enactment of a zoning ordinance which ‘ ‘ became effective on the 7th day of July, 1966 and is still in full force and effect ”; that the property, ‘ ‘ located within a district designated by said ordinance and set forth on said map [Town of Preble Zoning Ordinance District Map] as an agricultural and residential district ”, has and is being used as a ski center, restaurant and for other recreational activities; that the use of the property *355 “ does not conform to any of the uses permitted by said ordinance to be conducted in an agricultural and residential district and is a ‘ non-conforming use ’ as defined in said Zoning Ordinance that, “ upon information and belief ”, the defendants “ intend to conduct one or more open-air band concerts commonly known as ‘ rock festivals ’ at said premises at which at least 30,000 persons are expected to attend within twelve hours ”, and alleges that the concerts or festivals “would constitute a menace to the public health, safety and welfare of the residents of the Town of Preble, would constitute an unlawful extension and enlargement of a non-conforming use of the premises occupied by the defendant corporation ’ ’, and ‘‘ would constitute both a public and a private nuisance and would otherwise violate federal, state and local laws and ordinances.” The individual defendants are “ officers, agents and employees of the defendant, Song Mountain, Inc.”
The defendants’ answer to the complaint alleges general denials and, as a separate defense: 11 Upon information and belief, defendants allege that the pretended zoning ordinance referred to in plaintiff’s complaint is inoperative and void, was not enacted in accordance with law and if enforced will abridge the privileges and immunities of these defendants, will deprive defendant Song Mountain, Inc. of its property without due process of law, will deny to defendants and their invitees the right of peaceable assembly, and will deny defendants the equal protection of the laws, all in violation of the Constitutions of the United States and of the State of New York.”
There are submitted in support of the plaintiff’s motion for summary judgment several of the affidavits that were submitted on the application for a preliminary injunction, as well as the moving affidavit of the Supervisor of the plaintiff Town of Preble, together with supporting affidavits of plaintiff’s counsel and of Joyce GL Buggs, and the pleadings, including the defendants’ answer to the complaint and the answering affidavit on the application for a preliminary injunction. The question for determination on the motion for summary judgment is whether, upon all the papers and proof submitted on that motion, the court should, as a matter of law, direct judgment in favor of any party. To grant summary judgment, it must clearly appear that no material and triable issue of fact is presented, and the motion should not be granted where the issue is ‘ ‘ arguable ”. The pleadings and affidavits submitted on the motion for summary judgment show that there are triable issues of fact which may not be determined on the papers submitted; issues that may be determined only on the evidence, the testimony, the *356 proof presented by the parties upon trial. The plaintiff’s motion for summary judgment should be denied.
The motion made before trial for the dismissal of the plaintiff’s complaint as to the three individual defendants, made orally, without notice nor npon an order to show cause, should be denied.
The questions for determination in this action are: 1. Whether the Zoning Ordinance of the Town of Preble ‘ ‘ was enacted in accordance with law ”. Is it a valid ordinance! 2. If the ordinance is a valid one, will the proposed open-air concert or festival ‘ ‘ constitute an unlawful extension and enlargement of a non-conforming use of the premises occupied by the defendant corporation! ” 3. If the ordinance was properly enacted, and is a valid ordinance, does it “ deprive defendant Song Mountain, Inc. of its property without due process of law ”, or “ deny defendants the equal protection of the laws, all in violation of the Constitutions of the United States and of the State of New York! ” 4. Does the proposed concert or festival constitute a nuisance!
The ordinance in question here, and similar laws and regulations, must find their justification in some aspect of the police power, asserted for public welfare, as zoning ordinance restrictions on the use of private property are in derogation of the common-law right of the owner of realty to use his property as he pleases.
The Constitution of the State of New York (art. IX, § 2, subd. [c], par. [ii], subpar. [10]) empowers local governments, including towns, to enact local laws relating to the “ government, protection, order, conduct, safety, health and well-being of persons and property ’ ’. The Municipal Home Rule Law, (§ 10, subd. 1, par. [ii], subpar. a, cl. [11] [now cl. 12]), authorizes towns and other municipalities to adopt laws relating to the ‘ ‘ protection, order, conduct, safety, health and well-being of persons or property ’ ’ within the town. The enabling legislation by which the Legislature has delegated to the towns the power to enact zoning regulations is set forth in article 16 of the Town Law. The defendants assert that the zoning ordinance ‘ ‘ is inoperative and void ’ ’; and the burden of proof on the issue of the validity of the ordinance rests with the defendants ; the burden of proof rests with the defendants to overcome the presumption that the ordinance is valid.
Article 16 of the Town Law, in addition to including the enabling sections, comprehensively prescribes the procedure and substantive requirements for zoning property in a town, and provides in section 266 that the board may not pass a zoning *357 ordinance until it first appoints a zoning commission which must hold hearings and make a preliminary report before the Town Board may act. The defendants argue: That no zoning commission was duly appointed; that no preliminary report was made; that no public hearing on a preliminary report was held; that no final report was filed with the Town Board by a zoning commission; that the purported zoning ordinance was not a part of a comprehensive plan, and was not properly published and posted, and that the purported zoning map is incomplete on its face and ‘ ‘ inconsistent with the text of the purported zoning ordinance.”
Section 271 of the Town Law authorizes but does not require the appointment of a planning board. Section 266 of the Town Law provides that a planning board may be appointed as the zoning commission. Though the terms “ planning board ” and ‘ ‘ zoning commission ’ ’ were frequently used interchangeably by witnesses when testifying upon the trial, there is satisfactory proof that a zoning commission was, indeed, appointed on January 4, 1966, by the Preble Town Board, and the court so finds.
The Zoning Commission met weekly and their meetings were open to the public. There was published in a newspaper on May 28, 1966, a notice of a public hearing to be held on June 9, 1966, by the Zoning Commission “for the purpose of presenting and reviewing the regulations of the proposed zoning ordinance and the various districts laid out on the proposed map as recommended by the Zoning Commission.” The proof concerning publication of the notice was submitted by an affidavit of publication which was subscribed and sworn to on March 5, 1970. There was no affidavit of publication before that date, and none was ever on file with nor made a part of the records kept by the Town Clerk. Whether a hearing was held on June 9, 1966 is uncertain as there was no record of such a meeting available and no witness could recall the meeting. However, there was testimony by one of plaintiff’s witnesses that no report was submitted to the Town Board by the Zoning Commission until the night of July 7, 1966, the date the ordinance was adopted; while there was other testimony, by the Town Clerk, that there was a special meeting of the Town Board on June 21, 1966 to examine the ‘ ‘ Planning Board’s ” proposal, and to set a date for a public hearing. A notice of “ a public hearing upon a proposed zoning ordinance ” to “be held * # * on the 7th day of July, 166 [sic] at 7:30 p.m. ” was published in a newspaper on June 23, 1966. After the public hearing on July 7, 1966 there was a *358 special meeting of the Town Board at which the Zoning Commission made their final report. The final report was in the form of a proposed zoning ordinance, 18 pages upon which is typed the proposed ordinance, not signed by any member of the Zoning Commission, but which was presented to the Town Board with an oral report that the proposed ordinance was what had been arrived at. The ordinance was adopted on July 7, 1966, by the Town Board as presented, and was published in a newspaper on July 9, 1966.
The law gives the Town Board power to regulate by zoning -ordinance “ for the purpose of # * * the general welfare of the community.” (Town Law, § 261.) Section 263 of the same law provides, in part: ‘ ‘ Such regulations shall be made in accordance with a comprehensive plan”. “While formal written plans apparently were not contemplated by the state legislature when it required that zoning regulations be in accordance with a comprehensive plan, it clearly was intended that some planning precede zoning.” (67 N. Y. Jur., Zoning and Planning Laws, § 63.) The statute does not define “ comprehensive plan”, however, it does, in section 264 of the Town Law, titled “ Method of procedure ”, make reference to “an approved zoning map ” and makes reference to “ any map incorporated therein ”, referring to a zoning ordinance.
The ordinance adopted by the Town Board, in article III, “ Section 3-Establishment of Districts” under the heading' “ Districts ”, provides:
“ For the purpose of this ordinance the Town of Preble is hereby divided into five (5) types of districts as follows:
“ Residence Districts
“ Camp and Cottage Districts
“Business Districts
“ Agricultural Districts
‘ ‘ Industrial Districts
‘ ‘ Said Districts are set forth on the map accompanying this ordinance, entitled Zoning Map, dated July 7, 1966 and signed by the Town Clerk. This map and all explanatory matter thereon is hereby made a part of this ordinance.”
In the ordinance, “ Section 4 — District boundaries ”, reference is made to ‘1 the various districts as shown on the Zoning Map ”, and states that “ the boundary line shall be determined by the use of the scale of the Zoning Map ’ ’, and there are other references to “the Zoning Map ”. The zoning map referred to is approximately four and one-half by three feet in size, somewhat smaller than that discussed in Quick v. Town of Owego (11 A D 2d 285, affd. 8 N Y 2d 1144, remittitur amd. *359 9 N Y 2d 649). On the map there is written in ink “ Zoning Map”, and this was written on the map “ recently ”, within the past few months. The map, “ taken from original Cortland County survey 1853 ”, in the lower left corner has a red line approximately one inch long, to the right of which is printed “ Residential District ”, and below that is a blue line of approximately the same length, to the right of which is printed ‘ ‘ Industrial District”. No other legend or “ explanatory matter” appears on the map. The map is signed by the Town Clerk, however, her title does not appear with the signature and the date “ July 7, 1966 ”. Though the ordinance refers to “ Agricultural Districts ”, and the plaintiff’s complaint alleges that the property of “ defendant corporation is located within a district designated by said ordinance and set forth on said map as an agricultural and residential district ”, there is no legend for nor reference to “ Agricultural Districts ” on the “ Zoning Map ’ ’. There are many numbers printed on the map about which only one witness, one of the plaintiff’s witnesses, the Supervisor, was asked to explain, and the witness did not know and was unable to state what the numbers indicate. A single blue line has been drawn on the map and there is printed in pencil next to that line “ New Route 81 ”. Other blue lines appear in the area of the Route 81 and Route 281 interchange. On a small area in the vicinity of railroad tracks there are some green lines, and there are red markings along several highways, particularly in the northwestern area of the town, as shown on the map, and other portions of the map are unmarked except for lines to indicate highways, lakes and railroads. The numbers referred to and which appear on the map may well have significance to members of the Preble Fire Department as the map has printed on it “ Town of Preble Fire Department ’ ’, and it was in the town hall or hung in the Fire Department before it was used as a zoning map, and has been in the fire hall “ most of the time” since July 7, 1966, unfolded and on display. It should also be noted that the roads in the area of the premises of the defendant Song Mountain, Inc. are marked with red pencil, “ Residential District”.
Generally, procedures set forth in zoning statutes must be strictly adhered to; however, it has long been established that only a “ departure, in substance, from the formula prescribed by law vitiates the proceedings.” (Merritt v. Village of Portchester, 71 N. Y. 309, 312 [1877]; Quick v. Town of Owego, 11 A D 2d 285, 287 [1960], supra.)
The enabling statute applicable to towns, section 263 of the Town Law, requires that zoning regulations be in accordance *360 with a comprehensive plan. It is pointed out in Zoning Law and Practice in New York State, by Professor Robert M. Anderson (§ 5.02 in part): “The notion that zoning regulations should be imposed only in accordance with a comprehensive plan is founded on the basic premise that zoning is a means rather than an end. The legitimate function of a zoning regulation is to implement a plan for the future development of the community. • This was the aim of zoning regulation as it was conceived by its earliest proponents, and it remains as the modern justification of such regulation.”
A ‘1 master plan ’ ’ is not required, and whether a plan may be submitted orally need not be discussed, however, it is noted that zoning regulations should implement planning. (See Place v. Hack, 34 Misc 2d 777, 780.)
The defendants have sustained their burden of proof that there was no comprehensive planning by the Zoning 'Commission and that the regulations were not “made in accordance with a comprehensive plan ’ ’, and the court so finds.
The official map, too large for the Town Clerk’s bulletin board, but which was hung and displayed in her office at her home during the process of publication, and to which reference is made in the ordinance, was not entered ‘ ‘ into a book * * *
known as the ‘ ordinance book’.” (Town Law, § 30.) Nor was a copy of the zoning ordinance “ entered in the minutes of the town board ’ ’ as the statute, section 264 of the Town Law, requires. (Cohn v. Town of Cazenovia, 42 Misc 2d 218; Town of Schroeppel v. Spector, 43 Misc 2d 290, 293; Village of Old Westbury v. Foster, 193 Misc. 47, 50.) A map and ordinance must necessarily be prepared and written in broad terms; however, on the map in question the districts are not “ set forth ”, as recited in the ordinance. The court finds that the statutory requirements, the minimal requirements, were not met in adopting the zoning regulations, and because of the several omissions and defects, which are more than mere irregularities, the court is constrained to conclude that the zoning ordinance at issue is invalid, void and not binding on defendants.
Whether the outdoor concert or festival that defendants propose to conduct will be “an unlawful extension and enlargement of a non-conforming use of the premises ” or merely an increase in the volume of defendants’ business need not and, under the circumstances, is not reached or passed upon.
Municipal controls upon the use of private property come to the court with a presumption of constitutionality, as well as a presumption of reasonableness and validity; however, the *361 questions raised in this action, the issues pertaining to the constitutionality of the zoning ordinance as it pertains to the defendants and to the premises of the corporate defendant are not, under the circumstances, passed upon.
The plaintiff’s complaint alleges, as noted, “ thaf the proposed rock festival would constitute both a public and a private nuisance and would otherwise violate federal, state and local laws and ordinances.” The complaint further alleges “that by reason of the premises the plaintiff and its residents are in danger of suffering irreparable damage for which they have no adequate remedy at law.”
There is no substantial dispute as to the material facts relating to this aspect of the controversy. Before noting or discussing the facts relating to the open-air concert or festival that defendants propose to conduct, however, it should be noted that, generally speaking, a public nuisance is an act which interferes ‘ ‘ with the rights of the general public in the vicinity to the quiet enjoyment of life and property ”, and is defined as any act or omission “ which obstructs or causes damage to the public in the exercise of rights common to all.” (New York Trap Rock Corp. v. Town of Clarkstown, 299 N. Y. 77, 80, 81; see, also, Prosser, Torts [3d ed.], p. 605.) “If the danger threatens the public, the nuisance is classified as common; private, if it threatens one person or a few.” (Khoury v. County of Saratoga, 243 App. Div. 195, 199, affd. 267 N. Y. 384.) In either instance, both public and private nuisances, substantial interference with the interest involved must be demonstrated.
Whether any particular act, activity, event or business constitutes a nuisance cannot be determined by any fixed general rules, but depends upon the facts of each case. In considering whether or not an activity, event or business is a nuisance the location and surroundings must be considered with the other circumstances, as an activity carried on under some circumstances, in a particular location and surroundings, may be reasonable and appropriate and not subject to being enjoined, while, on the other hand, the same activity, in another location and in other surroundings, though; an innocent act in itself, might very well be inappropriate and subject to being enjoined by a court of equity. ‘1 A nuisance may be merely a right thing in the wrong place ” (Euclid v. Ambler Co., 272 U. S. 365, 388). It has also been said: “ One must expect such activities as are naturally incident to the character of the vicinity and the nature of the adjacent property.”. (42 N. Y. Jur., Nuisances, § 13.) Stating it another way, an act or an activity, innocuous and *362 proper under some circumstances, may not always be done regardless of the place or conditions. (Andrews v. Perry, 127 Misc. 320, 322.)
The premises of the defendant Song Mountain, Inc., located in the Town of Preble, a rural area, consists of approximately 386, ‘ ‘ roughly 400 ’ ’, acres of land on which there are buildings, and on which equipment and machinery used in the business carried on there are kept. Most of the land used by defendants is owned by the defendant corporation, except a small area, ‘ ‘ in the neighborhood of 15, 20 acres ”, or “40 to 45 ” acres on the top of the mountain, where part of a ski lift is located, which is leased with an option to purchase. The premises are on the south side of a county road referred to as the Song Lake Otisco Road, except for about 30 acres, on which there is a small house referred to as “ the chalet ’ ’, north of that county road. Much of the area is wooded, estimated on trial to be “ between 250 and 300 ’ ’ acres wooded, and on the slopes of the mountain there are ski trails used in the ski operation. The larger buildings used in connection with the defendants’ business are located at the base or the foot of the mountain. There was considerable testimony during the trial as to the property, and the property was viewed by the court in the presence of counsel. One building referred to as a “ lodge ” is a two-story building with “ probably 10,000 feet of space which is used for the lodge for the customers of Song Mountain ’ ’, and there are a cafeteria, bar and ski schools in the building. Another building, about 2,500 square feet, is used as a private ski club. There is another building, about 3,000 square feet, in which equipment and machinery are kept, and there are “various lift houses and so on that house the machinery that run the lifts.”
The defendant corporation, Song Mountain, Inc., of which the defendant Gordon Scott is president and 1 ‘ manager of the operation”, the defendant John Chapman vice-president, and the defendant Chris Chappaan an employee, was incorporated in 1962, and first opened for business in the winter of 1962M53. During the winter months1 the premises are used primarily for skiing purposes. On Friday nights during the past several years, 11 three years at least ’ ’, music has been furnished on the premises by rock bañéis or rock groups. At times the bands or groups have entertained the customers or patrons while playing inside the ‘ ‘ lodge ’ ’ and i he music was piped outdoors. On other occasions the .groups played outdoors, on the porch. On Saturday nights for the past “ four or five years ” Dixieland bands have entertained the patr ons or customers. During *363 the off-season, when there are no ski activities, there have been clambakes, picnics, luncheons, parties and other affairs conducted on the premises.
The premises on which Song Mountain, Inc. conducts its business is located in the northern part of the Town of Preble, Cortland County, approximately 500 to 1,000 feet, as estimated by one of the witnesses during the trial, from the Onondaga County line, southwest of the Village of Tully. The population of the Town of Preble is now “around 1,200” and was 969 at the time of the last census. There are several lakes in the area, including Song Lake, Tully Lake, Crooked Lake and Green Lake. On Song Lake, the nearest to the defendants’ premises, about a half mile from the premises, there are “ at least 50” cottages and houses, some of which are occupied the year-round, and there are other houses occupied the year-round in the area of Song Mountain. Access to the area is by county roads, the Song Lake Otisco Road having pavement 16 feet wide and shoulders of 2 feet, and also by using State highways, including Interstate Highway 81. On a “ normal ski weekend ’ ’, from Friday noon through Sunday, about 7,500 to 10,000 people are at Song Mountain, and on some days about 3,000 to 3,500 people are there. The largest crowd that has been in attendance was about 10,000 people who attended ski races on the premises. The parking lot on the premises “ will handle about a thousand cars ”, or “hold about 1200 cars.” Except for some fencing for cattle, there is no fence around the property.
The defendants propose to conduct on May 23 of this year an open-air concert and would hire a 1 ‘ name band ’ ’ to entertain those in attendance, and would also have ‘‘ five or six lesser name bands.” The period of entertainment originally considered was from noon to midnight and. was, after conferences, discussions and meetings, shortened, though not definitely decided, to ‘‘ run it from 2:00 o ’clock in the afternoon to 10:00 o’clock at night with major emphasis of music over at 9:00 o’clock and some rock group to entertain the group as they left the premises * * * [and] would run the name band around 7:00 o ’clock in the evening and the name band would play for 40 minutes.”
The defendants “ thought that 30,000 people would be a satisfactory enterprise A “ survey ’ ’ by defendants indicated that “ subject to the quality of the entertainment [they] might get anywhere from 5,000 to 50,000 or 60,000, if the entertainment was a caliber that would attract this number of people— because [they] have been thinking on the basis of 80,060.”
*364 During the trial of this matter, “ Woodstock ” was frequently mentioned, referring, of course, to the Woodstock Festival at Bethel, New York, during the past year, referred to in Drew v. Town-Mac, Inc., (61 Misc 2d 55, 57), where an estimated 400,000 to 450,000 persons attended a music festival. The testimony demonstrated, however, that there are numerous dissimilarities between “ Woodstock ” and the concert or festival that defendants propose to conduct, e.g., the number of name bands; the quality of the talent; the time the concert would be held; the length of the program, and other differences. Each case must, in any event, as noted, be determined upon its own facts.
The defendants ’ plans for the concert or festival proposed to be held on May 23 include the sale of tickets in advance; the tickets would include the admission fee and, if the ticket purchaser desired transportation to and from the site in a chartered bus or shuttle-bus to be furnished by the defendants, “ a round-trip bus ticket” could be purchased. Parking facilities for automobiles would be provided in an area .two or three miles from the site, and buses would be available to transport to the site, the defendants’ premises, those persons going to the concert by auto. The defendants ’ plans include having ‘1 between 175 to 200 ” acres near Routes 81 and 281, between Tully and Preble, available for parking. ‘1 Fifty acres hold about 7,500 to 10,000 ears.” Parking on the premises would not be permitted, except for those in charge of or performing some duty or task in connection with the enterprise. Several roads in the area, including a State highway, would be closed off by barricades at 12 or 13 key points; they would be “ limited access ” roads, open only to those who live in the area. The food and beverages for the patrons would be provided at tents on the north side of the Song Lake Otisco Road, across the county road from the area where the entertainment would be provided; fresh water would be provided on the premises; portable chemical toilets to accommodate a gathering of 60,000 people would be available. The testimony was that the age group of those that would attend the concert 1 ‘ runs from 16 to 25 * * * primarily college students and anybody else in this age bracket. ’ ’ There was also undisputed testimony that the college enrollment la tito u area of about 60 miles of Song Mountain” is approximately or “ slightly less than 100,000.” The defendant corporation would employ 100 to 125 persons for the purpose of <( internal security.” The “ internal security” personnel would include “ thirty people to man the road barriers ” and “ another seventy people * * * in cars to patrol the area ” vrltlilffl a three-mile radius.
*365 The plaintiff’s counsel notes in a memorandum submitted that the proposed concert would not permit through traffic on State Highway 281 between the Hamlet of Preble and the Village of Tully, a distance of about five miles, and urges, among other things, that: “ Users of this much traveled highway [State Highway No. 281] would be required to detour a distance of two miles out of their way to U. S. 11. Travelers on 281 would not have access to the Preble interchange of Interstate Route 81 but would have to detour by way of U. S. 11 as indicated to get upon Interstate 81 at Tully. Farmers taking their milk or other produce to market and the residents of the area would be interfered with in leaving the area to shop, go to church or travel for other purposes.”
The court recognizes that the defendants have important property rights in the use of the premises owned by the defendant corporation, as others do in their property, and the court will not deny the equal protection of the law to them; however, it should be noted and made clear that the other property owners and residents in the Town of Preble, and in the Town of Tully, in the area around defendants’ premises, have rights which must also be respected. ‘ ‘ It is a general rule of law that every person may exercise exclusive dominion over his own property and subject it to such uses as best subserve his interests, and no other person shall say how he shall use or what he shall do with his property. However, this principle is subordinate to another, which finds expression in the familiar maxim * * * that every person may make such use as he will of his own property, provided he uses it in such a manner as not to injure others.” (42 N. Y. Jur., Nuisances, § 10.) In balancing the equities there must be considered the rights and the interests of the defendants in conducting the proposed event, on the one hand, and, on the other hand, the serious consequences of permitting the defendants to conduct the proposed event in the particular surroundings and location they have chosen; the inconvenience and danger imposed upon the community by having important roads and highway blocked with crowds of people; the potential drain upon hospital personnel and facilities; the potential drain upon medical personnel and upon Sheriffs ’ personnel, of men needed throughout the counties for the performance of their regular duties. The potential for harm to the community, the public, far outweighs any good which might be derived from such an event.
The court concludes and finds that the proposed open-ids’ concert or festival that defendants propose to conduct on May 23 would, if conducted, interfere substantially with the rightsr *366 of the general public in the vicinity, and would obstruct the exercise of rights common to all, and should be enjoined.
The plaintiff seeks judgment enjoining defendants “from in any manner promoting or conducting any open-air band concert, rock festival or similar event at the premises ’ ’. However, bands, both rock and Dixieland, have been engaged at the premises for several years, playing indoors with the music piped outdoors and playing outdoors, and, of course, it may not be said, nor is it urged, that such entertainment is in anyway involved in this action, nor that it should be enjoined. During the trial some effort was made to define 1 ‘ rock festival ’ ’, but no definition or description of what is or what is not considered a “ rock festival ” was offered, though the term was frequently used. “Festival” could be defined, and “rock” could be defined, loosely, but “ rock festival ” was not. Absent any satisfactory definition or description, understood by all concerned, clearly informative as to what might be enjoined, the court should not enjoin “any open-air band concert, rock festival or similar event ”, though the concert or festival that defendants propose to conduct on May 23,1970 in the Town of Preble should be enjoined.
All motions upon which the court reserved decision and not herewith disposed of are denied.
This memorandum constitutes the decision of the court pursuant to CPLR 4213.
An order may be entered,
(1) Denying plaintiff’s motion for summary judgment;
(2) Denying the motion on behalf of the individual defendants for the dismissal of the plaintiff’s complaint.
A judgment may be entered,
Enjoining defendants, permanently, from promoting or conducting the open-air band concert or festival, the outdoor rock music concert, proposed to be held on May 23, 1970, in the Town of Preble, Cortland County, New York. No motion costs or taxable costs are awarded.