David O. Boehm, J.
This is an appeal from a June 23, 1971 order of the City Court of Rochester, Civil Branch (Galloway, J.) denying the motion of the plaintiff-appellant for a summary judgment pursuant to CPLR 3212.
The action originated in a suit brought by the appellant against the defendant-respondent Rochester Firemen’s Benevolent Association (hereinafter designated Association) for the sum of $800, which appellant claims is due him as a retirement benefit pursuant to the Association’s constitution and by-laws.
According to the appellant’s affidavit, the respondent’s answer, which is not in the appeal record, consists substantially of a general denial except that it admits payment of Association dues by the appellant in the amount of $901. The respondent does not deny such admission in its answer.
*257 The appellant bases his claim upon his membership in the Association for over 25 years and his being an active member of the Rochester Fire Department at Engine 5 for 11 years. By letter dated December 1,1967, appellant advised the trustees of the Association that he would elect to receive payment of the $800 retirement benefits upon the completion of his 25 years of membership. Some time thereafter, he was advised by officers of the Association and its attorney that the constitution and by-laws of 1956 were amended as to section 3 of article VJL1I in 1964 to change the words “ non-active member ” to “ retired member ” and that consequently the Association would not pay him. This lawsuit then ensued.
It is undisputed that appellant has been a member of the Association for over 25 years; that he has paid his dues for that period of time and that they were accepted; that appellant became an active member of the Rochester Fire Department on December 1, 1945 and served for 11 years. Respondent alleges that appelant’s termination from the Rochester Fire Department was due to dismissal for violation of a rule or regulation of the Fire Bureau on December 6, 1956. This did not affect his nonactive membership status in the Association.
Although there is some reference to a revision in 1964 of the Association’s constitution and by-laws, such revision has not been made a part -of the record. All that is before the court is the Association’s constitution and by-laws of 1956, and appellant’s motion must depend, therefore, upon its language.
Section 6 of article VT and section 3 of article V1EI are controlling upon the parties. The Association and its officers together with all of its members of any classification are bound by the provisions of the Association’s own constitution and by-laws. Since the only copy of such constitution and by-laws before the court is the one that was made part of the record by the appellant, the court is as much bound thereby as the parties.
The constitution sets out three classes of membership: “ Active ”, “Non-Active” and “Associate” (art. VT, § 1). Sections 2 and 3 of article VT define “Active” and “NonActive ’’members.
1 ‘ Active Members ’ ’ are uniform firemen who are members of the Rochester Fire Bureau.
“ Non-Active Members ” are defined in section 3 as “ Members who have severed their connection with the Fire Bureau and retain their membership in this Association.”
*258 Section 6 of article VI reads: “ Any member having a membership of five years or over who may resign or be discharged from the Fire Bureau for any cause other thorn criminal charges, may retain his membership in this Association by hiS' compliance with the Constitution and By-Laws and by continuing the payment of his monthly dues as hereinafter provided in Article VIH, Sec. 1.” (Emphasis supplied.)
The statement by appellant in his affidavit that no criminal charge has ever been brought against him is not denied by the respondent and must, therefore, be accepted as true.
Section 1 of article VIII calls for the suspension from all benefits and termination of membership1 of ‘ ‘ any active or nonactive member ” whose dues are in arrears 30 days. There is no such allegation as to the appellant in any of the papers before the court.
The pivotal section is section 3 of article VIII, which states: “Any non-active member who became such on or after January 16th, 1936 with a membership of twenty-five (25) years or more in this Association, may be paid the sum of Eight hundred ($800.00) dollars as a retirement benefit upon presentation of his claim to the Board of Trustees.”
It might be argued that the words ‘ ‘ may be ” in the above section indicate an intention on the part of the framers to make payment of such retirement benefits optional. However, this section must be read in conjunction with other sections where these same words appear in the same context. For example, section 2 of the same article VIII, dealing with “ active members ”, provides that an active member who is injured or disabled in the line of duty “ and upon being officially retired and pensioned from the Fire Bureau because of such injury or disability, may be paid the sum of eight hundred dollars ($800.00) as a retirement benefit, upon presentation of his claim to the Board of Trustees after the proper confirmation by the Chief of the Fire Bureau, if said member elects to receive his retirement benefit.” (Emphasis added.)
It is clear from a reading of this section that what is intended is that the member, not the board of trustees, be given the option of receiving payment of the $800 benefit upon his retirement for injury or disability. This same intention is clearly inferable from the use of the identical words ‘ ‘ may be paid ’ ’ in section 3 dealing with “ Non-Active members ”, regardless of the fact that the additional language found in section 2, i.e., “if said member elects to receive his retirement benefit ”, is not contained in .section 3, the paragraph which immediately follows.
*259 That such meaning is intended is further supported by the section which follows, section 4, “ Retirement Benefits ”, which provides: “ The Board of Trustees shall act upon all retirement benefit applications in the order in which they are received. However, they may defer or postpone the payment of said retirement benefit if in their judgment circumstances indicate such action to be necessary or desirable so that a proper balance of the Association funds shall be maintained at all times.”
It is quite clear, so clear, indeed, that there is no question of fact to be resolved with respect to this, that “ all ” retirement benefits “ shall ” be acted upon by the board of trustees.
The only option given to the board of trustees by the Association’s constitution is to decide whether to “ defer or postpone ’’payment, depending upon, in the judgment of the trustees, whether maintaining of “ a proper balance of the Association funds ” indicated “ such action to be necessary or desirable.”
However, the Association does not assert any such decision as the basis for denying payment of the retirement benefit to the appellant. Instead, it endeavors to place an interpretation upon the applicable sections of its constitution which the plain language thereof does not back up. The attempt to support such meaning by referring to 1964 amendments to the constitution cannot prevail if for no other reason than that of the document not being before the court; as a matter of fact, neither is any quoted language therefrom. The single reference to a paragraph heading is inadequate for any purpose.
Mention is made in one of respondent’s affidavits of a certificate of life insurance upon the appellant’s life, payable to his named beneficiary. The affidavit states that ‘ ‘ any dues paid by Mr. Schneider to the Association were accepted in payment for a life policy and not intended to be accepted for any retirement benefits.”
However, appellant’s letter of December 1, 1967 enclosing his check for $36 inpayment of his 1968 dues was never responded to. Appellant’s check, was accepted and endorsed by the Association “ Loan Fund”. The second paragraph of appellant’s letter, written by his attorney, states: “ Please note that his membership of twenty-five years in the Association will be reached in December, 1970. He elects under Article VIH, Sec. 3 of the Constitution and By-Laws to then receive $800.00 retirement benefit in accordance with the regular practice of the Association.”
Although the appellant could not, by his own letter, interpret the constitution in his own favor, nevertheless, weight must *260 be given to the fact that he was not advised by the Association, by mail or otherwise, that his dues were actually being applied to pay insurance premiums or that a change had been made in the constitution in 1964 affecting his claim.
Yet, even if appellant’s dues were received as premiums for a life policy, this very thing had been provided for in the constitution. Section 3 of article IX calls for payment of $3,000 at death of a nonactive member to his named beneficiaries “ less payment of Eight hundred dollars ($800.00) retirement benefit if so received by the deceased as provided for in Article VIII, Sec. 3 ”. Clearly, then, the purpose was again to give a nonactive member the option to receive the $800 during his life.
On the face of this record, there are no questions of fact for a jury to decide. It is undisputed that appellant paid annual dues to the respondent for over 25 years up to and including January 3, 1971, amounting to $901; that the dues were paid and accepted; that appellant presented his claim for retirement benefits pursuant to section 3 of article VIII of the constitution; that appellant was qualified to receive such benefits by virtue of his membership in the Fire Bureau for over five years as required by section 6 of article VI, nor had he been expelled (art. VI, § 10); and, that he was a nonactive member as defined by section 3 of article VI.
I find further that the words ‘ ‘ may be ’ ’, previously referred to, make payment optional with the member, subject to the Association’s right to postpone payment, which right it did not exercise pursuant to section 4 of article VHI.
This is not to say that the statements in respondent’s affidavits have 'been cast aside as unbelievable. Not at all. There may have been clear and compelling reasons why payment should not have been made. Some are touched on or tangentially referred to in the affidavits but, unfortunately, they are not supported by documentation and are therefore insufficient to defeat the claim which appellant has documented by solid proof. (Gray Mfg. Co. v. Pathe Ind., 33 A D 2d 739, affd. 26 N Y 2d 1045; Piccolino v. Massa, 33 A D 2d 643.)
In a motion for summary judgment, it is essential that the parties completely set forth and support their claims or defenses. Everything must be offered. Nothing may be withheld which is material to the purpose of successfully obtaining or resisting the application. Such a motion cannot be defeated by general or conclusory allegations. (See Practice Commentary, McKinney’s Cons. Laws of N. Y., CPLR. 3212, pp. 436-437.)
*261 Nor may the court rely upon the intention of the parties which depends upon an interpretation of 1964 amendments to the constitution. As previously noted, these amendments are not included or set forth in the record on appeal. Therefore, the intention of the parties must be derived from the four corners of the 1956 constitution which is in the record. If its language were ambiguous or unclear, there would be a question of fact dependent upon evidence of custom, practice and purpose, which would prevent the granting of summary judgment. But the language is not unclear; it is not ambiguous. It is plainly set forth and, whether reading the sections singly or together, the meaning and intent are clear.
Upon all of the papers and documents submitted, the cause of action of the appellant is sufficiently established as to warrant the court, as a matter of law, to direct summary judgment in his favor. (See Town of Preble v. Song Mountain, 62 Misc 2d 353.)
Accordingly, the order and judgment of the Rochester City Court, Civil Branch, of June 23,1971 is reversed, and judgment is awarded in favor of the appellant in the sum of $800, with interest and costs.