Charles R. Thom, J.
This matter originally consisted of four proceedings commenced by orders to show cause which were consolidated for hearing and argument on September 29, 1969 at which hearing each party was permitted to elicit testimony, and the commanding officer, Southampton Town Police and Joseph Steinfeld testified and a number of exhibits were received. These proceedings are as follows:
(1) A proceeding by James P. Drew v. Town-Mac, Inc., Joseph Steinfeld, the Town of Southampton and Robert Cameron, which proceeding was withdrawn by counsel on September 30,1969;
*56 (2) an action by the Town of Southampton against Joseph Steinfeld, John Dowd, William Swan, Town-Mac, Inc., and Saints Harbor, Inc., in which Joseph Steinfeld and Town-Mac, Inc. appeared, which is an action for a permanent injunction to restrain the defendants from holding concert performances known as “Long Island Peace Rock Festival ” scheduled for October 4, 5, and 6, 1969, and any future date, on the premises known as The Beach Club (also known as “ The Eye”) and “ Hot Dog Beach ”, until such time as defendants shall demonstrate their ability to fully comply with Ordinance No. 7 of the Town of Southampton; the other defendants were not served; plaintiffs ask for a preliminary injunction, and did obtain temporary restraining orders restraining defendants from advertising or sale of tickets for said performance;
(3) another action by the Town of Southampton against J oseph Steinfeld for a permanent injunction restraining defendant from promoting said festival within the Town of Southampton in which plaintiff also requests a preliminary injunction, and obtained a temporary restraining order similar to the one above;
(4) a proceeding under article 78 of the CPLE by Town-Mac, Inc. and J oseph Steinfeld against the Supervisor and the Town Clerk of the Town of Southampton for an order directing respondents to issue permits for which applications were made by these petitioners for licenses for the open air concerts at (1) Bridgehampton Race Circuit, (2) Beach Club (“ The Eye ”), and “'Hot Dog Beach.”
The remaining two actions by Town of Southampton against Steinfeld et al. and the article 78 proceeding will be considered together as essentially the issues are the same. The order to show cause by which the article 78 proceeding was brought was granted by the court on the same date as the return of the other orders to show cause, and, therefore, the moving papers upon which the latter were brought are deemed to be the answer to the article 78 proceeding.
It appears that subsequent to the issuance of the temporary restraining order in Actions 2 and 3 above, Joseph Steinfeld as president of Town-Mac, Inc. applied to the Town of Southampton for licenses to conduct the outdoor festival, which licenses were denied, and the article 78 proceeding was brought.
The applications for licenses at the Beach Club (“ The Eye ”) and “ Hot Dog Beach” were denied on the grounds that (1) the applicant failed to obtain the written consent of the occupants of dwellings within 1,000 feet of the subject premises, and (2) the applicant failed to demonstrate that free automobile *57 parking space in area twice that of the area to be used for the undertaking was available. These requirements are contained in Ordinance No. 7 of the Town of Southampton, which governs the licensing of outdoor performances of the type under consideration here. The ordinance provides in part: “ No license shall be issued if the premises to be used are * * * within one thousand (1,000) feet of any dwelling unless a written consent signed by the person or head of such dwelling, shall be filed with said application.
“ Any applicant for a license shall be required to provide free automobile parking space adjacent to the premises to be used, to an area at least twice the area to be used for the undertaking to which the license shall apply ”.
The application for a license at the Bridgehampton Race Circuit was denied on the grounds that the use of that site for the holding of open air concerts is not a use permitted by Ordinance No. 26 of the Building Zone Ordinance of the Town of Southampton.
The Town of Southampton contends that in addition to denying the applications for licenses on the grounds of the above-mentioned ordinances, it is seeking injunctive relief because the holding of these performances on the dates scheduled, or at any other time would cause great numbers of persons, possibly upwards of '/ 0,000, or more, to congregate at either of the three proposed sí , without adequate supervision, and thereby creating serious ' ?oblems concerning policing, traffic, sanitation, and food and water supply. The town is apprehensive of the Long Island Peace Rock Festival, being another “ Woodstock ”, referring to the recent events at Woodstock, New York, where an estimated 400,000 persons attended a music festival.
Defendants, Mr. Steinfeld et al., contend that the action of the Town Supervisor and Town Clerk in denying his applications for licenses was illegal, arbitrary, capricious and discriminatory; that the requirement of Ordinance No. 7 of the consent of persons occupying dwellings within one thousand (1,000) feet of the subject premises is illegal and invalid; that defendants propose to conduct a lawful business enterprise; that there is no parallel between defendants’ proposed endeavor and li Woodstock ’ ’, and that the town is relying upon an air of hysteria in the community caused by the town itself. Defendants further maintain that several open air music concerts were held at the Bridgehampton Race Circuit during the summer of 1968, of which the town denies any knowledge and if such events were held they were held without the town’s permission, nor were any licenses issued. Defendants ask the court to compel the town *58 to issue the necessary licenses to hold their concerts, especially at the Bridgehampton Race Circuit, and that the court further deny the town’s applications for preliminary injunctions.
Defendants’ contention challenging the validity of that portion of Ordinance No. 7 requiring the consent of occupants of dwellings within one thousand (1,000) feet of the subject premises is not without merit. Under such a provision, the whim, or inaction of one person could prevent the use of any premises for the holding of the types of activity enumerated in the ordinance, no matter how lawful, beneficial, or desirable the activity may be. The provision places an unreasonable restriction upon the use of property, and is, therefore invalid. (Matter of Concordia Collegiate Inst. v. Miller, 301 N. Y. 189.) Were this the only issue to be considered by the court, defendants would be entitled to the relief they ask. However, there are more important issues here. Under its police powers, a municipality has the right to promulgate laws and ordinances, and its duly elected and appointed officers may make determinations concerning the regulation and control of certain forms of public activities, be they athletic events, shows, exhibitions, carnivals, or a myriad of other forms of public entertainment. In making a determination not to permit the conducting of any of these types of events, the municipality must show that its determination has a .substantial relationship to the public health, the public morals, the public safety or the public welfare. (Nectow v. Cambridge, 277 U. S. 183; Euclid v. Ambler Co., 2 U. S. 365; Cusack Co. v. City of Chicago, 242 U. S. 526.)
At the hearing before the court on September 30, 1969, Mr. Steinfeld testified that originally he had anticipated a crowd of between 500 and 1,500 persons, and that he would be “ happy ” if 1,000 persons attended the proposed concerts. He was asked the following question by the Town Attorney: “Now Mr. Steinfeld at this point how many people do you estimate would show up at this concert if it were held this coming weekend? ” In answer he stated: “ I believe we can get an attendance, because of the publicity, of four possibly five thousand. ’ ’
In view of the defendant’s own revised estimate of a greatly increased number of persons, it would appear that either of the two proposed sites of Beach Club (“ The Eye ”) or “ Hot Dog Beach ”, would create a serious hazard to public safety. Both locations are on a narrow strip of land, surrounded on two sides by water. Access is provided over two bridges, one at either end, and the road along the beach is narrow. In addition to the problems which would be created from traffic congestion, *59 there are also greater problems of sanitary facilities, living accommodations, fresh water and food for the several thousand persons who may attend the concerts, which would be held for a period of three days.
The town’s concern is not without foundation. It is not just a case of local hysteria. There is a very clear potential danger to the public health, safety, and general welfare.
The court is not unmindful of, and indeed it would be remiss if it were to ignore, what has occurred in similar situations in this State and in other States in recent years, some of the gatherings of a similar nature were peaceful and others were not. Some of these resulted in violence and disorders. Even though Mr. Steinfeld estimates an attendance of four to five thousand, there is no way to predict the numbers who may attend, and “ Woodstock ” was an outstanding example of this, and no assurance that disorder might not result. The potential for harm to the community far outweighs any good which might be derived from such an event.
Defendants further maintain that the site of the Bridgehampton Race Circuit, a late starter in this matter, would be better suited for the proposed festival in view of the now anticipated much larger crowd. The town’s denial of a license for this site was based on Ordinance No. 26 of the Zoning Ordinance of the Town of Southampton. In 1966 the area was zoned Residence u A ” and Agricultural. The holding of auto races on the site was a prior nonconforming use. However, according to the Town, no other type of business activity is permitted thereon, including the use, which defendants propose, of a music festival.
Defendants do not challenge the validity of this ordinance, but rather assert that prior concerts were held on the raceway site, and denying them a permit is discriminatory, as far as this site is concerned, they have complied with Ordinance No. 7. The court cannot agree with defendant’s position. The fact that prior concerts were held on the site, whether with or without a license from the town, does not entitle defendants to a permit as a matter of right.
Each case must be considered on its own merits. Mr. Steinfeld testified that he had attended a concert at the Raceway Circuit last summer. It was a one day affair and he estimated the crowd at approximately 1,200. Defendants anticipate a crowd of between 4,000 and 5,000 for their proposed three day affairs, with day and night sessions.
Although at the Bridgehampton Race Circuit site the problem of traffic congestion may not be as acute as the previously dis *60 cussed two sites, nevertheless, the other problems would still exist concerning sanitary facilities, living accommodations and fresh water and food for the anticipated crowd.
In view of the foregoing, the court cannot say that the town has acted unreasonably in denying the defendants permits to hold this type of event. Considerations of public safety, health, and general welfare must control.
The court further finds that the town is entitled to a preliminary injunction, by sustaining the burden of showing a clear legal right to the remedy and that irreparable injury result if the same were not granted. (CPLR 6301; Reed v. Littleton, 275 N. Y. 150.) A preliminary injunction does not determine the ultimate issues in question but serves to preserve the status quo until a trial and decision on the merits.
Accordingly, on the application of Town of Southampton against Joseph Steinfeld et al., defendants, Joseph Steinfeld and Town-Mac, Inc. are hereby enjoined and restrained from holding and conducting the performance known as The Long Island Peace Rock Festival, at the sites known as Beach Club (“ The Eye ”) and “ Hot Dog Beach ”, in the Town of Southampton, State of New York, pending the trial of the first action for a permanent injunction, and on the application of the Town of Southampton against Joseph Steinfeld, defendant, Joseph Steinfeld, individually and as an officer of Town-Mac, Inc. is enjoined and restrained from holding and conducting the performance known as The Long Island Peace Rock Festival, to the extent of the site of the Bridgehampton Race Circuit, pending the trial of the second action for a permanent injunction, and the petition of Town-Mac, Inc. and Joseph Steinfeld pursuant to article 78 of the CPLR, is and the same is hereby dismissed.
* The temporary restraining orders contained in the show cause orders are continued until the entry of the order to be settled herein.