GRAMLING, Appellant, v. CITY OF WAUWATOSA, Respondent.

*No. 130. Argued October 27, 1969.—Decided November 25, 1969.*
(Also reported in 171 N. W. 2d 897.)

636

For the appellant there was a brief by *Gregory Gramling, Jr., in pro. per.,* and *Roland J. Steinle, Jr.,* both of Milwaukee, and oral argument by *Mr. Steinle.*

For the respondent there was a brief and oral argument by *Milton F. Burmaster* of Wauwatosa, special counsel.

HANLEY, J. Two issues are raised on this appeal:

(1) Does a requirement that the mayor exercise his appointive power from a limited list of approved candidates constitute an unlawful limitation of the appointive power; and

(2) Did the city of Wauwatosa, in amending its charter, comply with the statutory provisions for exercising its home-rule authority?

### *Delegation of Appointive Powers.*

The state legislature, in abolishing special charters, has established ch. 62 of the Wisconsin statutes as the general charter for all cities of the second, third and fourth classes.[3] Pursuant to art. XI, sec. 3 of the Wisconsin Constitution, it has also granted such municipalities the power to amend this charter by enacting charter ordinances.[4] A charter ordinance is defined in sec. 66.01 (2) (a) as "any ordinance which enacts, amends or repeals the whole or any part of the charter of a city or village, or makes the election mentioned in subsection (4) of this section."

---

[3] *See* footnote 1.

[4] "66.01 Home rule; manner of exercise. . . . "

It is the contention of the appellant that requiring the mayor to choose from a *specified* number of recommended candidates constitutes not only an unauthorized limitation on the mayor's power of appointment, but also a delegation of a substantial portion of this power.

Sec. 62.09 (3), Stats., provides:

"MANNER OF CHOOSING. (a) The mayor and aldermen shall be elected by the voters.

"(b) The other officers except as provided in section 62.13 shall be selected by one of the following methods:

"1. Appointment by the mayor.

"2. Appointment by the mayor subject to confirmation by the council.

"3. Appointment by the council.

"4. Election by the voters.

"5. Selection under any of the above methods, the selection to be made from an eligible list established pursuant to section 66.19.

"6. Such other officers shall continue to be selected in the manner prevailing on April 15, 1939, provided one of the above plans was in force on that date. Such method shall be continued until changed in the manner provided by section 66.01."

Although this section expressly provides for "appointment by the mayor subject to confirmation by the council," it contains no provision for limiting the number of persons to be considered by him when making the appointment.

Relying on sec. 62.11 (5), Stats., the respondent contends that no express statutory provision validating its establishment of the panel is necessary. Sec. 62.11 (5) states:

"POWERS. *Except as elsewhere in the statutes specifically provided, the council* shall have the management and control of the city property, finances, highways, navigable waters, and the public service, and *shall have power to act for the government and good order of the city,* for its commercial benefit, and for the health, safety, *and welfare of the public, and may carry out its powers*

*by* license, regulation, suppression, borrowing of money, tax levy, appropriation, fine, imprisonment, confiscation, and *other necessary or convenient means. The powers hereby conferred shall be in addition to all other grants, and shall be limited only by express language."* (Emphasis supplied.)

Authority for the contention that a city operating under its general charter laws, unless expressly limited, has all powers which the legislature could confer, is found in *Hack v. Mineral Point* (1931), 203 Wis. 215, 219, 220, 233 N. W. 82.

It is the respondent's position that it has adopted the selection method authorized by sec. 62.09 (3) (b) 2, Stats., and that it has merely established the advisory panel to effectuate its chosen method. In support of this position it relies upon sec. 62.04 as requiring that its authority be liberally construed to include the establishment of such a panel.

"62.04 **Intent and construction.** It is declared to be the intention of the revision of the city charter law, to grant all the privileges [,] rights and powers, to cities which they heretofore had unless the contrary is patent from the revision. *For the purpose of giving to cities the largest measure of self-government compatible with the constitution and general law, it is hereby declared that sections 62.01 to 62.26, inclusive, shall be liberally construed in favor of the rights, powers and privileges of cities to promote the general welfare, peace, good order and prosperity of such cities and the inhabitants thereof."* (Emphasis supplied.)

In regard to use of advisory panels, 3 McQuillin, *Municipal Corporations* (3d ed. rev.), p. 318, sec. 12.72, states:

". . . [T]he selection of an officer or employee upon the recommendation of a business organization, for example, a chamber of commerce or other civic association, is *not* a delegation of the power to appoint." (Emphasis supplied.)

As authority for this general statement of the law the respondent cites *Bellows v. City Council of Cincinnati* (1861), 11 Ohio 544, 546. There a state statute required that appointment of officers should be provided for by ordinance. Pursuant to this statute the city council passed an ordinance authorizing the city solicitor to appoint various inspectors " '. . . "Provided that such appointments be made from persons designated by . . . the chamber of commerce." ' " In upholding this provision the Ohio Supreme Court stated that:

". . . the practical effect of the provision is substantially this—that the appointment shall be made from persons whose qualifications and fitness the . . . chamber of commerce is willing to indorse. . . . [This] seems to us to be a judicious and politic regulation; for . . . the chamber of commerce, representing, as it probably does, the great mercantile interests of the city, will naturally feel a peculiar interest in promptly designating persons properly qualified for the duties of the office. . . ." *Bellows v. City Council of Cincinnati, supra,* at page 549.

As in the instant case confidence had been placed in the advisory group in order to assist the appointing power in locating persons qualified for the position. Although the *Bellows Case* differs from the instant case in that the number of candidates submitted to the appointing authority was not restricted to a predetermined number, a selection system substantially identical to that of the respondent was approved in *Bradley v. Board of Zoning Adjustment* (1926), 255 Mass. 160, 150 N. E. 892.

There the constitutionality of a statute was attacked on the ground that the freedom of appointment naturally appurtenant to the power to name a public officer was unlawfully curtailed. The statute had provided that eleven members of the Board of Zoning Adjustments were to be appointed by the mayor from recommendations submitted by eleven different organizations. Each organization was to submit a list of two candidates, one of which the mayor was required to appoint.

In upholding the validity of this procedure the Supreme Judicial Court of Massachusetts noted that the various nominating groups possessed specialized knowledge of those "best adapted by character, learning, experience and common sense to perform the specified duties."

The purpose underlying the appointing procedure employed in both *Bellows* and *Bradley* was to provide expert advice to assist the individual in whom the authority to appoint had been vested. *See also: Cassese v. Lindsay* (1966), 51 Misc. 2d 59, 272 N. Y. Supp. 2d 324. Likewise, the procedure adopted by the respondent insures Wauwatosa residents of obtaining the services of a highly qualified city attorney.

Although the procedure adopted by the respondent somewhat limits the scope of the mayor's choice, it limits his choice to those best qualified for the position. We think that the procedure adopted by the respondent thus promotes the "welfare of the public" within the meaning of sec. 62.11 (5), Stats., and does not constitute an unlawful delegation of the authority to appoint.

### Compliance with Statutory Provisions.

It is not disputed that the city attorney is a public official whose appointment or selection is within the home-rule authority of a municipality. *Thompson v. Whitefish Bay* (1950), 257 Wis. 151, 42 N. W. 2d 462. However, the appellant does contend that the exercise of this authority must comply with the provisions of sec. 66.01, Stats. Sub. (2) (b) thereof requires that:

"Every charter ordinance which amends or repeals the whole or any part of a city or village charter shall designate specifically the portion of the charter so amended or repealed, and every charter ordinance which makes the election mentioned in subsection (4) of this section shall designate specifically each enactment of the legislature or portion thereof, made inapplicable to such city or village

by the election mentioned in subsection (4) of this section."

Sec. 66.01 (4) to which sec. 66.01 (2) (b) refers provides:

"Any city or village may elect in the manner prescribed in this section that the whole or any part of any laws relating to the local affairs and government of such city or village other than such enactments of the legislature of state-wide concern as shall with uniformity affect every city or every village shall not apply to such city or village, and thereupon such laws or parts thereof shall cease to be in effect in such city or village,"

but is inapplicable to the instant case.

The charter ordinance amended by the respondent and approved by referendum referred only to sec. 20.07 (2) of the Wauwatosa city code and in pertinent part specifically stated that "Section 20.07 (2) of the Code is hereby amended by the deletion therefrom of the words 'City Attorney.' " It is apparent that it did not refer to ch. 62 of the Wisconsin statutes which, as previously noted, constitutes the general charter for all cities of the second, third and fourth classes.

The appellant thus contends that to be effective as a change of charter, it would have had to refer specifically to sec. 62.09 (3) (b), Stats., and declare either that the city was electing that such section of the charter was inapplicable to the city or declare that in selecting its city attorney by appointment of the mayor, subject to the confirmation of the city council, it was amending the charter to provide for the use of the advisory panel.

In support of this contention he cites *State ex rel. Coyle v. Richter* (1931), 203 Wis. 595, 234 N. W. 909, wherein this court invalidated a charter ordinance which made the election mentioned in sec. 66.01 (4), Stats., but failed to specifically designate the statute thus made inapplicable to the city. From this case the appellant correctly concludes that any charter ordinance which failed

to designate the portion of the city charter being amended or repealed would likewise be declared invalid.

However, the appellant's argument is fallacious in that it assumes that the word "charter" as used in sec. 66.01 (2) (b), Stats., refers exclusively to ch. 62 of the statutes. Since by definition a charter ordinance includes ordinances which amend the city's charter, it naturally follows that upon enactment such ordinances become part of the city's charter.

The charter ordinance being attacked on this appeal was enacted to "amend" a previous charter ordinance which upon enactment had become part of the city's charter. Such charter ordinance had been numbered sec. 20.07 (2), and reference thereto by the instant charter ordinance fulfilled the requirement of sec. 66.01 (2) (b), Stats.

We conclude that the amended charter ordinance is valid and in full force and effect. It is controlling and prevails over the election of a city attorney.

*By the Court.*—Judgment affirmed.

BEILFUSS, J., took no part.