(815 P.2d 1116)

No. 65,994

FORREST R. "WOODY" EDGINGTON, *Appellant*, v. CITY OF OVER-LAND PARK, KANSAS, ED EILERT, DON LYSAUGHT, JR., PAUL STERRETT, W. JACK SANDERS, J. F. LEHNERTZ, THOMAS C. OWENS, AILIE SPEER, BYRON C. LOUDON, WAYNE C. BYRD, and GEORGIA ERICKSON, *Appellees.*

722

Opinion filed July 26, 1991.

*Mark L. Bennett, Jr.,* and *Lori M. Callahan,* of Bennett, Dillon & Callahan, of Topeka, for appellant.

*J. Nick Badgerow* and *Nancy M. Landis,* of Spencer Fane Britt & Browne, of Overland Park, and *Robert J. Watson,* city attorney, of Overland Park, for appellees.

*James M. Kaup,* of Topeka, for *amicus curiae* League of Kansas Municipalities.

Before ELLIOTT, P.J., REES, J., and WILLIAM D. CLEMENT, District Judge, assigned.

ELLIOTT, J.: In a case in which Forrest R. "Woody" Edgington alleged that the Overland Park City Council improperly rejected his nomination to fill a vacant seat on the council, Edgington appeals the trial court's granting of the defendants' motions to dismiss and for summary judgment.

We affirm.

*Factual Statement*

Edgington has been active in Overland Park politics since the 1970s. He was appointed to the city council in 1972 and elected to the council in 1973 and 1977. He was defeated in bids for mayor in 1981 and a council seat in 1985. In March 1987, plaintiff was defeated by incumbent council member Andy Happer in the third ward Republican primary.

Shortly after that primary, the council passed Charter Ordinance 40, around which this appeal revolves. Charter Ordinance 34 provided that vacancies on the council would be filled by a recommendation from the precinct committee of the departing member's political party. Ordinance 40 amended Ordinance 34, providing the council with the power to reject the precinct committee's nominee, following which rejection the precinct committee must continue nominating candidates until the vacancy is filled.

Plaintiff alleges the council members, in passing Charter Ordinance 40, conspired to keep him off the council because he opposed their positions on issues and was not perceived as a "team player."

Council member Happer died in office and the third ward Republican committee nominated Edgington to fill the vacancy. The council unanimously rejected the nomination and asked for the recommendation of "another person" pursuant to the ordinance. Instead, the committee recommended plaintiff two more times. The council refused to act on the nominations.

Edgington filed suit in four counts, alleging that:

(1) Charter Ordinance 40 was improperly enacted and constitutionally defective;

(2) the council acted arbitrarily and capriciously in rejecting plaintiff's nomination;

(3) the council deprived plaintiff of due process and equal protection in violation of 42 U.S.C. § 1983 (1988), and;

(4) the members of the council conspired to reject plaintiff's appointment in violation of 42 U.S.C. § 1985 (1988).

The trial court granted summary judgment in defendants' favor on counts 1 and 4 and granted defendants' motion to dismiss with respect to counts 2 and 3.

## Preliminary Matters

### A. Scope of Review

While the trial court decided the issues on both a summary judgment motion and a motion to dismiss, the facts considered by the court were undisputed and the issues presented were questions of law. Accordingly, our review is plenary or unlimited. *Hutchinson Nat'l Bank & Tr. Co. v. Brown*, 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied* 243 Kan. 778 (1988).

### B. Standing

*Amicus curiae* League of Kansas Municipalities urges plaintiff lacks standing to challenge the validity of Charter Ordinance 40. Patently, a private individual cannot attack the legality of the organization or reorganization of a city. *Babcock v. City of Kansas City*, 197 Kan. 610, 611, 419 P.2d 882 (1966).

While a private citizen cannot attack the very existence of a city, the law does not preclude an attack on the internal organization of the city's government. Thus, an individual may have standing if he or she has a special interest other than that of the general public. See *Sawyer v. Chapman*, 240 Kan. 409, 410-11, 729 P.2d 1220 (1986) (individual lacks standing if he/she "has not suffered damages different in kind from that of the public generally"); *Fransham v. McDowell*, 202 Kan. 604, 610-11, 451 P.2d 131 (1969).

In the present case, Charter Ordinance 40 has prevented Edington from assuming a seat on the city council. He has thus suffered alleged damages different from that of the general public.

Accordingly, plaintiff has standing to challenge the validity of the ordinance.

### C. Mootness

The unexpired term which plaintiff sought to fill has now expired. In a sense, this case is moot. Nonetheless, we shall address the merits of the appeal, since the issues presented with respect to the charter ordinance are of statewide interest and importance. See *Smith v. Miller*, 213 Kan. 1, 5, 514 P.2d 377 (1973) (although school term for which plaintiff was expelled ended prior to argument, appeal nonetheless entertained where real controversy

had existed and case involved questions of statewide interest and importance).

D. *The Summary Judgment Problems With Respect To Counts 1 and 4*

Plaintiff argues the trial court erroneously granted summary judgment because discovery was not complete. The trial court granted summary judgment on counts 1 (constitutional validity of the ordinance) and 4 (the 42 U.S.C. § 1985 claim). The trial court indicated that both claims could have been decided by either a motion to dismiss or on a motion for judgment on the pleadings, since only questions of law were presented.

Because defendants wished to argue the doctrine of practical construction (which required exhibits of charter ordinance amendments from other cities) the summary judgment format was properly utilized.

While summary judgment motions are normally denied where discovery is not complete, they are properly granted on the pleadings where only a question of law is presented. *Spears v. Kansas City Power & Light Co.*, 203 Kan. 520, 528, 455 P.2d 496 (1969).

Under the peculiar facts and circumstances surrounding this case, the trial court correctly considered summary adjudication with respect to counts 1 and 4.

*Ordinances, Statutes, and Constitutional Provisions*

Article 12, § 5 of the Kansas Constitution grants cities the power of home rule. Section 5(c)(1) allows a city to exempt itself by charter ordinance from legislation not applicable uniformly to all cities.

Section 5(c)(2) provides that a charter ordinance shall be so titled, shall designate specifically the legislative enactment made inapplicable to the city, and shall require a super majority vote of two-thirds of the members of the City's governing body. Section 5(c)(3) provides for a 60-day delay in the charter ordinance's becoming effective, during which voters may petition for a referendum.

Finally, § 5(c)(4) provides that a charter ordinance may be repealed or amended only by another charter ordinance.

Overland Park is a first-class city employing a mayor-council-city manager form of government pursuant to K.S.A. 12-1036a

*et seq.* K.S.A. 12-1036d states that a vacancy on the city council shall be filled by the council until the next regular election.

In 1984, the city council, pursuant to the home rule amendment to the constitution, passed Charter Ordinance 34. The ordinance specifically made K.S.A. 12-1036d inapplicable to the city. Section 9(b) of the ordinance provided that a vacancy was to be filled by recommendation from the precinct committee of the political party represented by the council member whose office was vacated. That recommended person "shall serve in such office until the next regular City election."

In 1987, shortly after the Happer/Edgington primary, the city council adopted Charter Ordinance 40 entitled, "A Charter Ordinance Amending and Repealing Existing Section 9 of Charter Ordinance No. Thirty-Four Relating to Vacancies on the Council and Providing a Method for Filling Such Vacancies."

Section 1(b) of the new ordinance provides that in the event of a vacancy, the precinct committee shall recommend a replacement to the council. The council may either appoint the recommended replacement or may reject the recommended replacement. If the recommendation is rejected, the precinct committee is required to recommend "another person" for council consideration.

Charter Ordinance 40 did not specifically state that K.S.A. 12-1036d was to be inapplicable to the city.

### The Constitutionality of Charter Ordinance 40

Plaintiff argues that the constitutional mandate is clear in requiring a charter ordinance to specifically designate the statute from which the city is exempting itself; since Charter Ordinance 40 did not make that specific exemption statement, it is invalid. It follows, urges Edgington, that Charter Ordinance 34 controls and the council lacks the power to reject his recommendation to fill the vacant Happer seat.

We find plaintiff's arguments overly simplistic. The home rule provisions do not specifically require an amending charter ordinance to again state the statute which is inapplicable to the city. Pragmatically, such a requirement would be redundant since the city has already exempted itself from the statute in question. Charter Ordinance 40 amended and repealed *only* section 9 of

Charter Ordinance 34. Section 1 of Charter Ordinance 34 exempting the city from the statute remains in place.

It is, however, entirely reasonable to require that a charter ordinance be amended only by another charter ordinance, in order to preserve the super majority and referendum period protective requirements.

Defendants rely on *Gramling v. City of Wauwatosa*, 44 Wis. 2d 634, 642-44, 171 N.W.2d 897 (1969), for the proposition that an amending charter ordinance need not specify the statute which is inapplicable to the city. Defendants argue the case is controlling because the Kansas home rule amendment was based on the Wisconsin home rule statute. See Crummett, *City Home Rule in Kansas*, 9 Washburn L.J. 1, 3 (1969); Martin, *Home Rule For Kansas Cities*, 10 Kan. L. Rev. 501 (1962); *cf.* Dyson, *Ridding Home Rule of the Local Affairs Problem*, 12 Kan. L. Rev. 367, 378, n.73 (1964).

Defendants' argument is slightly flawed. It is true that when Kansas adopts a statutory or constitutional provision from another state, cases on the book of that state at the time of the Kansas adoption are considered as written into our provision. See *Woodring v. Hall*, 200 Kan. 597, 601, 438 P.2d 135 (1968); Jacobson, *The Enlargment of Jurisdiction Over Unlicensed Foreign Corporations Committing Torts in Kansas: New Code 60-308*, 12 Kan. L. Rev. 49 (1963).

However, the *Gramling* decision was filed eight years after the 1961 effective date of our home rule amendment. Further, the Wisconsin statute specifically provided that amending charter ordinances need refer only to that portion of the charter ordinance being amended. See Wis. Stat. § 66.01(2)(b) (1989-90).

Notwithstanding the filing date of *Gramling*, the basic rationale of *Gramling* is valid; once a charter ordinance is adopted, the provisions become a part of the city's charter and further reference to an inapplicable statute is unnecessary.

Defendants also urge the doctrine of practical construction, which the Supreme Court has utilized to give deference to longstanding state interpretation of constitutional provisions. See, *e.g.*, *Smiley v. Holm*, 285 U.S. 355, 369, 76 L. Ed 795, 52 S. Ct. 397 (1932). See also *Leek v. Theis*, 217 Kan. 784, 794, 539 P.2d 304

(1975) (history of executive and legislative approval of a statute leads to presumption of validity).

Based on exhibits presented, the trial court found that "practically all" amending charter ordinances adopted by Kansas cities do not redesignate the parts of legislative enactments previously made inapplicable to the city.

If there is any reasonable way to construe a statute as constitutionally valid, it should be done. *City of Baxter Springs v. Bryant,* 226 Kan. 383, 385, 598 P.2d 1051 (1979). Further, the "presumption of good intention must be accorded the city in passing the ordinance." Unless clearly void, the ordinance is to be upheld. *Desser v. City of Wichita,* 96 Kan. 820, 821, 153 Pac. 1194 (1915).

Finally, the authority granted by home rule is to be liberally construed in order to give cities the largest measure of self-government. Kan. Const. art. 12, § 5(d).

The trial court properly ruled that Charter Ordinance 40 passes constitutional muster.

### Plaintiff's Claims Under 42 U.S.C. § 1985

42 U.S.C. § 1985 provides a claim for relief against conspiracies formed to deprive a person or class of persons of the equal protection of the law. In *Griffin v. Breckenridge,* 403 U.S. 88, 102, 29 L. Ed. 2d 338, 91 S. Ct. 1790 (1971), the court held that the statute means "there must be some racial, or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' action."

Plaintiff contends defendants conspired to deprive him of his right to a seat on the city council, alleging that § 1985 protects victims of alleged nonracial, politically motivated conspiracies. After *Griffin,* some federal circuits did hold that § 1985 extends to nonracial political conspiracies. *E.g., Keating v. Carey,* 706 F.2d 377 (2d Cir. 1983). But, language in *United Brotherhood of Carpenters & Joiners, Local 610 v. Scott,* 463 U.S. 825, 77 L. Ed. 2d 1049, 103 S. Ct. 3352 (1983), has called those cases into serious question.

The *Scott* Court recognized that § 1985 was enacted to protect blacks and their contemporary supporters (mainly Lincoln Republicans) in the post-Civil War South. The Court then said:

"Although we have examined with some care the legislative history that has been marshaled in support of the position that Congress meant to forbid wholly nonracial, but politically motivated conspiracies, we find difficult the question whether § 1985(3) provided a remedy for every concerted effort by one political group to nullify the influence of or do other injury to a competing group by use of otherwise unlawful means. To accede to that view would go far toward making the federal courts, by virtue of § 1985(3), the monitors of campaign tactics in both state and federal elections, a role the courts should not be quick to assume." 463 U.S. at 836.

Since *Scott*, courts have placed heavy reliance on the quoted dicta and have held that § 1985 does not apply to political conspiracies unmotivated by racial bias. We agree. See *Gibson v. United States*, 781 F.2d 1334, 1341 (9th Cir. 1986), *cert. denied* 479 U.S. 1054 (1987); *Harrison v. KVAT Food Management, Inc.*, 766 F.2d 155, 161 (4th Cir. 1985); *Grimes v. Smith*, 776 F.2d 1359 (7th Cir. 1985); *Brown v. Reardon*, 770 F.2d 896 (10th Cir. 1985). The Second and Sixth Circuits have also questioned their prior decisions. See *Gleason v. McBride*, 869 F.2d 688 (2d Cir. 1989); *Conklin v. Lovely*, 834 F.2d 543 (6th Cir. 1987).

The trial court correctly ruled that nonracial, political conspiracies are beyond the ambit of 42 U.S.C. § 1985.

### Protected Classes

Plaintiff's action also fails because he has not demonstrated membership in a class which suffers from invidious discrimination. Those discriminated against must be victims not because of any personal malice the conspirators have toward them, but because of their membership in or affiliation with a particular protected class. *Gleason v. McBride*, 869 F.2d at 695.

Edgington claims membership in the following allegedly protected classes:

1. Supporters of Woody Edgington for the Ward 3 position on the city council;
2. Republicans;
3. Individuals who have previously run for city council and have been defeated.

We are unable to hold that Republicans are a minority historically subjected to invidious discrimination in Johnson County, and, in any case, members of the modern Republican party are simply not a class protected by § 1985. *Cf. Harrison v. KVAT*

*Food Management, Inc.*, 766 F.2d at 161 (Lincoln Republicans protected because they were involved in post-Civil War struggle for human rights).

Individuals who previously ran for the city council cannot be a class subject to discrimination. Plaintiff claims several have actually been appointed to seats on the council, and in fact bases his equal protection argument on this allegation.

Supporters of Woody Edgington could be considered a protected class if members were regularly persecuted because of their active support for plaintiff. But Edgington cannot be a member of that group because he is the candidate himself. Any discrimination arising due to his political views would be directed at him individually. *Gleason*, 869 F.2d at 695 (candidate who claimed he was discriminated against because he was political opponent of defendants and was vocal in his opposition to their policies not protected by § 1985).

The trial court properly granted judgment in favor of defendants on this claim.

### The Nonjusticiable Political Question Issue

The trial court granted defendants' motion to dismiss as to counts 2 and 3, ruling in part that the issues raised were nonjusticiable political questions.

The nonjusticiability of a political question stems from the doctrine of separation of powers. Political questions commonly arise where there is a "textually demonstrable constitutional commitment of the issue to a coordinate political department." *Baker v. Carr*, 369 U.S. 186, 210, 217, 7 L. Ed. 2d 663, 82 S. Ct. 691 (1962); see also *Van Sickle v. Shanahan*, 212 Kan. 426, 438, 511 P.2d 223 (1973) (adopting *Baker v. Carr* standards for political questions).

Under our constitution, the legislature has the power to determine the manner of selection of all public officers unless otherwise stated in the constitution. *Leek v. Theis*, 217 Kan. at 813-14. The home rule amendment implicitly delegates to the cities the authority to determine the manner of selection of city officers. This is a "textually demonstrable" commitment of the issue to a coordinate political department. The city council exercised its authority by passing Charter Ordinance 40; therefore, the exercise of this authority is a nonjusticiable political question.

Plaintiff, however, argues that defendants' alleged denial of his right to equal protection constitutes a justiciable claim. The only way we could determine if plaintiff was denied equal protection would be to create the criteria for a seat on the city council and then determine if those criteria have been uniformly applied. That determination is clearly beyond the power and authority of this court. See *Baker v. Carr*, 369 U.S. at 227.

The trial court properly ruled that counts 2 and 3 present nonjusticiable political questions.

*Did Plaintiff Have a Due Process or Equal Protection Right to a Seat on the City Council?*

This question relates to plaintiff's claim under 42 U.S.C. § 1983. Plaintiff claims he was nominated to fill the vacancy on the council and defendants rejected him because he had lost two previous elections. As a result, goes plaintiff's argument, defendants violated § 1983.

The trial court ruled plaintiff failed to state a claim because he had no due process or equal protection rights to be seated on the council. The trial court correctly ruled on this issue.

To state a § 1983 claim, plaintiff must establish that defendants acted under color of state law to deprive him or her of a federal right. See *Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 694 (10th Cir. 1988). In the present case, everyone agrees defendants acted under color of state law, but even if everything plaintiff alleges were true, he was not deprived of a federal right.

To prevail on this claim, plaintiff must have been deprived of a definite liberty or property interest. Under Charter Ordinance 40, the council was free to reject plaintiff's nomination; therefore, Edgington had nothing more than a mere expectancy of gaining a seat on the council. This does not elevate itself to a protected property or liberty interest. See *Leek v. Theis*, 217 Kan. at 811 (unilateral expectation of a benefit is not a property interest). *Cf. Lynch v. Chase*, 55 Kan. 367, Syl. ¶ 1, 40 Pac. 666 (1895) (incumbent has no property or vested interest in public office).

An equal protection claim requires an element of intentional or purposeful discrimination between persons or classes. In the present case, plaintiff alleges defendants' actions were arbitrary and capricious and in violation of state law; but he does not allege his rejection was affected by or related to the appointment of

any other nominee. Plaintiff's allegations are simply insufficient to sustain an equal protection claim. See *Snowden v. Hughes*, 321 U.S. 1, 7-10, 88 L. Ed. 497, 64 S. Ct. 397 (1944).

The trial court properly ruled that plaintiff failed to state a claim under § 1983.

### The Immunity Claim of Defendants

Defendants are clothed with absolute immunity for their actions if voting to reject plaintiff's nomination was a legislative, as opposed to an administrative, act. See *Lake Country Estates v. Tahoe Planning Agency*, 440 U.S. 391, 59 L. Ed. 2d 401, 99 S. Ct. 1171 (1979).

Granted, the line between legislative and administrative acts is sometimes a bit fuzzy. While hiring and firing are administrative acts, some cases indicate that appointing to a public office is a legislative function. See *Leek v. Theis*, 217 Kan. at 808 (appointment to office is executive function; confirmation of appointment is legislative function). Since defendants were acting to confirm or reject an appointment to the city council, their act was legislative in nature.

Even if defendants' conduct was not a legislative act, they are entitled to a qualified immunity. Government officers are not liable for civil damages unless their actions violate clearly established rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982).

Mere knowledge of an abstract constitutional right is not enough; the contours of the right must be sufficiently clear that a reasonable official would understand that he/she is violating that right. *Anderson v. Creighton*, 483 U.S. 635, 639-40, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987).

Here, defendants enacted Charter Ordinance 40 in accordance with widely accepted procedures and rejected plaintiff's nomination pursuant to the clear terms of that ordinance. There is simply nothing in the terms of the ordinance or defendants' stated reason for rejecting plaintiff which could lead a reasonable official to realize Edgington's rights to due process and equal protection were being violated, if indeed they were.

The judgment is affirmed.