[No. A081426. First Dist., Div. Two. Nov. 17, 1998.]

TIMOTHY GILLESPIE et al., Plaintiffs and Appellants, v.
SAN FRANCISCO PUBLIC LIBRARY COMMISSION, Defendant and
Respondent.

**COUNSEL**

Andrew M. Zacks for Plaintiffs and Appellants.

Louise H. Renne, City Attorney, Burk E. Delventhal and Amy S. Ackerman, Deputy City Attorneys, for Defendant and Respondent.

## OPINION

KLINE, P. J.—Timothy Gillespie, doing business as Public Access Project, and James Chaffee appeal from the judgment of the San Francisco Superior Court denying their petition for a writ of mandate by which they sought to set aside the San Francisco Public Library Commission's nomination of candidates for city librarian. On appeal, petitioners contend that (1) the Commission violated the Ralph M. Brown Act (Gov. Code, § 54950 et seq.)[1] (Brown Act) and San Francisco's "Sunshine Ordinance" (S. F. Admin. Code, § 67.1 et seq.) by meeting in closed session because it had no power to appoint a city librarian; and (2) the commission violated the same statutes by failing to announce the nominations at the same meeting they were made. We shall affirm the judgment.

### FACTUAL AND PROCEDURAL HISTORY

The San Francisco Public Library Commission (Commission) held a duly noticed closed session at a special meeting on July 15, 1997. One of the purposes of the closed meeting was to consider the appointment of an acting city librarian. After the meeting, the Commission reconvened in open session and announced that it had interviewed three candidates, and that their names would be submitted to the mayor for consideration.

The Commission held another meeting on August 5, 1997, at which it announced that the mayor had appointed Regina Minudri to the position of acting city librarian, and that it would not disclose the names of the two unsuccessful candidates. The Commission also reported the roll call vote reflecting an unanimous vote in favor of Minudri's nomination.

Petitioners filed a petition for writ of mandate on July 22, 1997. They alleged the Commission violated the Brown Act and the Sunshine Ordinance by meeting in closed session to select nominees for city librarian, and by failing to announce the roll call vote of this action when it reconvened in open session. Also on July 22, petitioners filed an ex parte application for an order staying any further procedures in closed session by the Commission. They did not seek to stay further action by the mayor's office on the nominations. The superior court granted the stay.

On August 14, 1997, the Commission filed its answer and points and authorities in opposition to the petition.

The superior court denied the petition for writ of mandate on October 17, 1997. The court reasoned that open hiring sessions "could jeopardize [applicants'] present positions if it were known that they were applying for another

---

[1]Unless otherwise specified, all further statutory references are to the Government Code.

position. Completely public consideration of applicants could potentially expose them to embarrassment and the unwanted disclosure of their interest in the position, past experience and the merits and demerits of their employment qualifications." The court thus held the Commission was entitled to select candidates for the city librarian position out of public view. The court reasoned that if it ruled otherwise, qualified applicants would be lost, the interviewing process would be inhibited, and the entire hiring procedure would be "unworkable."

The court entered judgment for the Commission on December 2, 1997. Petitioners filed notice of appeal on January 8, 1998.

DISCUSSION

I.

Petitioners' first contention on appeal is that the Commission violated the Brown Act and the Sunshine Ordinance by meeting in closed session to select its nominees for acting city librarian. Petitioners contend the citizens of San Francisco provided for a "two-tier" system of nominating and appointing department heads to ensure that the nominations would be made in a publicly disclosed manner. They argue that although both statutes permit closed sessions to consider the "appointment" of a public employee, neither the Brown Act nor the Sunshine Ordinance provides an exception to the general rule of openness for the "nomination" of a candidate. Petitioners therefore assert that because the Commission did not have the power to appoint, its consideration of candidates should have been open to the public. We disagree.

The central purpose of the Brown Act is to ensure the sovereignty of the people over the agencies which serve them. (§ 54950.)[2] To this end, the Legislature decreed that the actions of public commissions, boards and councils "be taken openly and that their deliberations be conducted openly" so that the public could have a voice in shaping policy. (§ 54950.) The San Francisco Board of Supervisors enacted the Sunshine Ordinance with a

___

[2]Section 54950 sets forth the policy behind the Brown Act as follows:

"In enacting this chapter, the Legislature finds and declares that the public commissions, boards and councils and the other public agencies in this State exist to aid in the conduct of the people's business. It is the intent of the law that their actions be taken openly and that their deliberations be conducted openly.

"The people of this State do not yield their sovereignty to the agencies which serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created."

similar goal in mind.[3] The Sunshine Ordinance ensures that city and county commissions, boards and councils conduct their business before the people, and that "City operations are open to the people's review." (S.F. Admin. Code, § 67.1(b).)

Notwithstanding the mandates of these provisions, both the Brown Act and the Sunshine Ordinance permit a closed session where its purpose falls within an explicitly delineated exception. An exception listed in both section 54957 and San Francisco Administrative Code section 67.10 pertains to matters of staffing and personnel. Section 54957 provides, in relevant part: "Nothing contained in this chapter shall be construed to prevent the legislative body of a local agency from holding closed sessions . . . during a regular or special meeting to consider the appointment, employment, evaluation of performance, discipline, or dismissal of a public employee . . . ."

The Sunshine Ordinance, in San Francisco Administrative Code section 67.10(b), similarly authorizes a commission to hold a closed session: "To consider the appointment, employment, evaluation of performance, or dismissal of a City employee, if the policy body has the authority to appoint, employ, or dismiss the employee . . . ."

Petitioners contend this language must be strictly construed, and that the Commission therefore lacked the authority to hold a closed session to nominate candidates for the city librarian position. Both the Brown Act and the Sunshine Ordinance permit closed sessions for the consideration of *appointment* of a city employee. However, neither statute provides an express exception for a candidate's *nomination* by a committee that lacks the power to appoint. Petitioners therefore conclude that permitting a closed session in this case would be an unwarranted expansion of the exception, and an encroachment on the Legislature's right to draft the law. Petitioner reads the language of the exceptions too narrowly.

The underlying premise of petitioners' argument is that the mayor alone possesses the power to appoint the city librarian. It is true that the mayor

---

[3]San Francisco Administrative Code section 67.1 sets forth the guiding principles of the Sunshine Ordinance as follows:

"(a) Government's duty is to serve the public, reaching its decisions in full view of the public.

"(b) Commissions, boards, councils and other agencies of the City and County exist to conduct the people's business. This ordinance will assure that their deliberations are conducted before the people and that City operations are open to the people's review.

" . . . . . . . . . . . . . . . . . . . .

"(e) The people of San Francisco want an open society. They do not give their public servants the right to decide what they should know. The public's right to know is as fundamental as its right to vote. To act on truth, the people must be free to learn the truth. . . ."

ultimately selects the successful candidate. The mayor's discretion is not, however, absolute.

The San Francisco City Charter of 1996, article IV, section 4.102 provides: "Unless otherwise provided in this Charter, each appointive board, commission or other unit of government of the executive branch of the City and County shall: [¶] . . . [¶] 5. Unless otherwise specifically provided, submit to the Mayor at least three qualified applicants, and if rejected, to make additional nominations in the same manner, for the position of department head, subject to appointment by the Mayor . . . ."

San Francisco City Charter section 3.100(18) requires the mayor to "[a]ppoint department heads subject to the provisions of the Charter." Charter section 8.102 provides that the Commission is part of the executive branch. Thus, candidates for department head of the library department (the city librarian) are nominated by the Commission, and the mayor is required to appoint a candidate from the Commission's list of nominees. Both the Commission and the mayor must participate in the appointment process before a candidate can be selected. The charter's language therefore compels the conclusion that although the mayor has the power to ultimately select the successful candidate, he shares the power of appointment with the Commission. The Commission's closed session was thus permissible under both the Brown Act and the Sunshine Ordinance.

Though no California cases address this particular issue, a similar situation was presented in *Gramling* v. *City of Wauwatosa* (1969) 44 Wis.2d 634 [171 N.W.2d 897], cited by petitioners. In *Gramling*, the City of Wauwatosa passed an ordinance dictating the method for appointment of a city attorney. Subject to confirmation by the common council, the mayor was to appoint the city attorney from a list of two to three candidates submitted by a reviewing panel of three attorneys. (*Id.* at p. 898.) Wisconsin state law provided for mayoral appointment of city officers subject to confirmation by the council, but did not specifically provide for appointment from a reviewing panel's list. (*Id.* at p. 899.) The appellant therefore alleged violations of state law, contending the mayor's power of appointment was improperly delegated to the panel. (*Id.* at p. 899.) The court rejected these claims, finding that the use of an advisory panel was not a delegation of appointment power. (*Id.* at p. 900.)

Petitioners contend *Gramling* stands for the proposition that the mayor's appointment power is absolute, and that a body vested with the power to nominate candidates has no appointment power because no such power has

been delegated to it. Petitioners ignore the fact that even though no power of ultimate appointment was "delegated," the reviewing attorneys did in fact materially participate in the appointment process. The relevant Wauwatosa charter ordinance charged the reviewing panel with reviewing all applications for the office of the city attorney, and compiling a list of two to three "finalists" for submission to the mayor. The mayor was then bound to appoint the successful candidate from that list. (171 N.W.2d at p. 898.) As with our case, no appointment could be made without the participation of both the mayor and the reviewing panel. The Wisconsin Supreme Court upheld the validity of this system, and the opinion of the trial court in this case is in accordance therewith. The trial court was therefore within its discretion when it concluded that appointment power is shared by the Commission and the mayor.

The Attorney General's Opinion at 80 Ops.Cal.Atty.Gen. 308 (1997), further compels the conclusion that the Commission was entitled to hold a closed session in this case. The Attorney General considered whether a committee consisting of community representatives, district employees and a student, formed by the board of trustees of a school district, could lawfully meet in closed session to interview candidates for the office of district superintendent. (*Ibid.*) The committee was empowered to make a recommendation to the board, but it did not have any power of appointment. (*Id.* at pp. 308, 310.) The Attorney General concluded the committee could hold closed sessions to interview candidates as long as it serves the purposes of section 54957: "[T]o foster candid discussions by members of the legislative body concerning the qualifications of staff or prospective staff members without subjecting the latter to public embarrassment." (80 Ops.Cal.Atty.Gen. at p. 310.) The trial court in this case cited similar considerations when it denied mandamus.

Petitioners argue the Attorney General's opinion does not apply to this case because the committee at issue in the opinion was created by and subservient to the school board of trustees. Petitioners therefore contend appointment power was properly "delegated" to that committee by the board. By contrast, the Commission is neither a creature of nor subservient to the mayor's office, and the mayor could delegate no appointment power to the Commission. Petitioners therefore conclude that because the city charter intended the nomination and appointment functions to be distinct, both functions cannot logically fall under the section 54957 exception to openness.

Petitioners again ignore the fact that although the city charter gives only the mayor the power to "appoint," Commission and the mayor perform that

duty jointly. Although the mayor's office has not delegated appointment power to a "subservient entity," the Commission nonetheless has considerable control over who is ultimately appointed. Therefore, the reasoning behind the Attorney General's opinion applies with even greater force to this situation, where the appointment power is effectively shared.

Petitioners' contention that the Attorney General's opinion misconstrues the purposes of the Brown Act is likewise without merit. It is true, as petitioners assert, that the purpose of the Brown Act is open meetings and public access to the actions of its representatives. However, the opinion deals not with the Brown Act's general rule of openness, but with the scope of section 54957, an exception to that rule. The Attorney General's opinion does not question the Brown Act's general mandate, but rather, interprets the "appointment" exception with that mandate in mind. Its conclusion, that the candidate's right to privacy outweighs the public's right to attend screening interviews, applies with equal force where nominations are at issue.

Finally, petitioners contend the San Francisco City Charter provides for the separation of the nomination and appointment functions because the citizens wanted nominations to be open to public scrutiny. Petitioners offer no authority to substantiate this assertion. At least equally compelling is the notion that nominations were separated so that expert advice regarding candidates' strengths and weaknesses could be procured from those most qualified to make such judgments. Nomination of candidates by an expert party ensures that the mayor will ultimately appoint a highly qualified public official, to the benefit of the citizens at large. (See *Gramling* v. *City of Wauwatosa, supra,* 171 N.W.2d at pp. 900-901.) There is insufficient evidence to conclude that in separating the two functions, the charter's drafters disregarded these considerations and sought only to preserve the public's right to know.

## II.

Petitioners' second contention is that the Commission violated the Brown Act and the Sunshine Ordinance by failing to announce the names of its nominees for city librarian, and its roll call vote thereon, at the same meeting in which it made the nominations. Petitioners reason that the Commission's nomination of three candidates in closed session constituted an "action taken to appoint a public employee" for purposes of section 54957.1, subdivision (a), and San Francisco Administrative Code section 67.14(b)(4). We disagree.

Section 54957.1 provides, in pertinent part: "(a) The legislative body of any local agency shall publicly report any action taken in closed session and

the vote or abstention of every member present thereon, as follows: [¶] . . . [¶] (5) Action taken to *appoint*, employ, dismiss, accept the resignation of, or otherwise affect the *employment status* of a public employee in closed session pursuant to Section 54957 shall be reported at the public meeting during which the closed session is held." (Italics added.)

Similarly, San Francisco Administrative Code section 67.14(b) provides, in pertinent part: "(b) A policy body shall publicly report any action taken in closed session and the vote or abstention of every member present thereon, as follows: [¶] . . . [¶] (4) Employee Actions: Action taken to *appoint*, employ, dismiss, transfer or accept the resignation of a public employee in closed session pursuant to Government Code Section 54957 shall be reported immediately in a manner that names the employee, the action taken and the position affected and, in the case of dismissal for a violation of law or of the policy of the City, the reason for dismissal." (Italics added.)

The plain language of the act and the ordinance makes clear that only a candidate's *actual appointment*, and not a candidate's *nomination*, need be reported along with the corresponding roll call vote on the day of the action.

█ When interpreting statutes, courts are bound to adhere to the Legislature's intent, as evinced by the plain meaning of the actual words of the law. (*People* v. *Loeun* (1997) 17 Cal.4th 1, 9 [69 Cal.Rptr.2d 776, 947 P.2d 1313].) "The plain meaning rule presupposes that statutory words and phrases are used in their common and ordinary sense. Thus, 'courts should give effect to statutes "according to the usual, ordinary import of the language employed in framing them." ' " (*County of Sacramento* v. *Pacific Gas and Electric Co.* (1987) 193 Cal.App.3d 300, 309-310, [238 Cal.Rptr. 305], quoting *Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 918 [80 Cal.Rptr. 89, 458 P.2d 33].) " ' "Words must be construed in context, and statutes must be harmonized, both internally and with each other, to the extent possible." [Citation.]' " (*People* v. *Loeun, supra,* 17 Cal.4th at p. 9, quoting *Woods* v. *Young* (1991) 53 Cal.3d 315, 323 [279 Cal.Rptr. 613, 807 P.2d 455].)

█ Both the Brown Act and the Sunshine Ordinance mandate that "action taken to appoint" a public employee in closed session is to be publicly reported at the same meeting at which such action was taken. In its ordinary usage, "appoint" means "to name officially," in this context to an office, post or service. (Webster's New Collegiate Dict. (8th ed. 1977) p. 55.) When used in its ordinary sense in the Brown Act and the Sunshine Ordinance, "appoint" must therefore mean the *final* selection of a candidate for a public office.

The surrounding language in the relevant statutory provisions lends credence to this conclusion. Brown Act section 54957.1, subdivision (a)(5), requires the Commission to report "[a]ction[s] taken to appoint, employ, dismiss, accept the resignation of, or *otherwise affect the employment status of a public employee* . . . ." (Italics added.) Similarly, the Sunshine Ordinance provides for the reporting of "[a]ctions taken to appoint, employ, dismiss, transfer or accept the resignation of a public employee in closed session . . . ." (S.F. Admin. Code, § 67.14(b)(4).) A plain reading of these statutes compels the conclusion that only actions taken in closed session which *immediately* affect the employment status of a public official are to be reported the same day. A commission's act of employing, dismissing, transferring, or accepting the resignation of a public official has an immediate effect on that official's employment status. It is unlikely that the Legislature intended "appoint" to mean an act having less than the same effect, in light of the surrounding language. The *appointment* of a public employee affects his or her status in this manner. A candidate's *nomination* does not. There is no reason for this court to believe the word "appoint" was intended to encompass more than its plain meaning indicates.

*Compensation of Hospital Administrator,* 63 Ops.Cal.Atty.Gen. 215 (1980), provides support for this analysis. The Attorney General considered whether the terms "to appoint, employ or dismiss," as set forth in section 54957.1, "are to be given a limited construction according to their plain import, or are to be given a construction which encompasses other personnel matters such as the setting of a specific employee's salary."[4] (63 Ops.Cal.Atty.Gen. at p. 218.) He concluded that section 54957.1 was to be construed according to its plain import, and that the section therefore applied "only to action taken to actually appoint, employ or dismiss a public employee." (63 Ops.Cal.Atty.Gen. at p. 218.)

The Attorney General gave three reasons for his conclusion. First, he noted that section 54957 permitted a closed session "*to consider* the appointment, employment or dismissal of a public employee" whereas section 54957.1 required reporting for "action *taken* 'to appoint, employ or dismiss' such an employee." (63 Ops.Cal.Atty.Gen., *supra,* at p. 218, italics in original.) The Attorney General deemed the difference in language significant: "The Legislature, in enacting section 54957.1, did not provide that

---

[4]In 1980, section 54957.1 read as follows: "The legislative body of any local agency shall publicly report at the public meeting during which the closed session is held or at its next public meeting any action taken, and any roll call vote thereon, to appoint, employ, or dismiss a public employee arising out of any closed session of the legislative body." (Stats. 1980, ch. 1284, § 22, p. 4342.)

The statute was amended to its present form in 1993. The amendments did not materially affect the reporting requirements for personnel actions. (Stats. 1993, ch. 1137, § 13.)

all 'action taken' *with respect to* the appointment, employment or dismissal of an employee be reported at the legislative body's next public meeting, but provided that action taken *to* appoint, employ or dismiss an employee be so announced." (*Ibid.*, italics in original.) The Attorney General thus concluded that section 54957.1 was intended to be strictly construed. (63 Ops.Cal.Atty.Gen., *supra*, at p. 219.)

Second, the history of section 54957.1 indicated that it was not to apply to personnel matters in general. (63 Ops.Cal.Atty.Gen., *supra*, at p. 219.) Section 54957.1 was initially proposed as an addition to the California Public Records Act in 1975. (63 Ops.Cal.Atty.Gen., *supra*, at p. 219) The proposed legislation would have required the legislative body to read the minutes of closed proceedings at the next public meeting. (*Ibid.*) The proposal was later modified to require the public reporting of " '*any action taken*, and the rollcall vote thereon, *in any prior executive session.*' " (*Ibid.*, italics in original.) The final version of the bill similarly required that only "any action *taken*, and the rollcall vote thereon, to appoint, employ, or dismiss a public employee" be publicly reported at a subsequent meeting. The Attorney General concluded that the changes in the bill, from broad to more restrictive language, strongly indicated that the Legislature "intended section 54957.1 to be accorded its usual import and apply only to the actual act of appointing, employing or dismissing a public employee." (63 Ops.Cal.Atty.Gen., *supra*, at pp. 219-220.)

Finally, and most importantly, the Attorney General concluded that construing section 54957.1 to encompass all personnel matters could impliedly repeal or amend away much of section 54957 (permitting closed sessions to consider personnel matters) and its purpose: "[A] primary reason for the 'personnel exception' to the Ralph M. Brown Act is to avoid undue publicity and embarrassment to the affected employee. It is patent that to require a public report on all 'action taken' in executive session on 'personnel matters' could effectively destroy the 'personnel exception.' For example, a report would be required that it had been decided *not* to dismiss an employee even if the possible dismissal was not a matter of public knowledge. Such an announcement would run completely counter to the purpose of section 54957 with respect to personnel executive sessions." (63 Ops.Cal.Atty.Gen., *supra*, at p. 220.)

Section 54957 would similarly be undermined in this case if the Commission was required to publicly report its nominations immediately after they were made, but before a particular candidate had been appointed. The privacy interest protected by section 54957 would be valueless if the Commission was bound to so report its private actions in closed session immediately following its conclusion.

Petitioners contend our finding regarding the scope of section 54957.1 cannot be harmonized with our previous conclusion: that respondents are de facto participants in the appointment process and are thus entitled to nominate candidates in closed session. We disagree. As noted previously, the language of Brown Act section 54957 authorizes a Commission to hold a closed session "to *consider the appointment*, employment, evaluation of performance, discipline or dismissal of a public employee . . . ." (Italics added.) The Sunshine Ordinance, San Francisco Administrative Code section 67.10(b), similarly authorizes a commission to hold a closed session "[t]o *consider the appointment*, employment, evaluation of performance, or dismissal of a City employee, if [the commission] has the authority to appoint, employ, or dismiss the employee . . . ." (Italics added.) We previously concluded that a body therefore need not be vested with sole power of appointment before it may properly "consider the appointment" of a public officer in closed session.

By contrast, Brown Act, section 54957.1 and Sunshine Ordinance, San Francisco Administrative Code section 67.14(b), require the announcement of "action taken to appoint" a public employee on the day such action is taken. To "appoint" a candidate is, by definition, to make the final staffing decision after all *considerations* have been concluded. The Commission, though endowed with some degree of influence over the appointment process, did not have the authority to make the final decision. Only the mayor could have taken "action to appoint" a city librarian, and thereby affected an immediate change in the successful candidate's employment status.

### III.

Petitioners' final contention on appeal is that the trial court improperly "overruled" the language of the Brown Act and Sunshine Ordinance when it harmonized the San Francisco City Charter with those provisions. We disagree. The trial court properly interpreted these laws and their relation to each other to give proper effect to their purpose.

■ "The goal of statutory construction is to ascertain and effectuate the intent of the Legislature. . . . Ordinarily, the words of the statute provide the most reliable indication of legislative intent. . . . When the statutory language is ambiguous, the court may examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes. . . ." (*Pacific Gas & Electric Co.* v. *County of Stanislaus* (1997) 16 Cal.4th 1143, 1152 [69 Cal.Rptr.2d 329, 947

P.2d 291], citations omitted.) "State statutes should be construed, if possible, to avoid conflict with city charters." (*San Francisco Internat. Yachting etc. Group* v. *City and County of San Francisco* (1992) 9 Cal.App.4th 672, 681-682 [12 Cal.Rptr.2d 25].) The trial court properly interpreted the Brown Act and the Sunshine Ordinance to harmonize them with each other. Further, the court's interpretation was fully consistent with the language and purposes of both.

## DISPOSITION

The judgment is affirmed.

Lambden, J., and Ruvolo, J., concurred.