The Honorable Margaret E. Long State Representative, 36th District 1801 N. 126th Street Kansas City, Kansas 66109
Dear Representative Long:
As State Representative for the 36th District, you ask our opinion on whether attendance by a member of a city governing body at a dinner hosted by an entity prior to its submission of an application for a lottery gaming facility violates Section 31(d) of the Kansas Expanded Lottery Act (KELA).[1] As a determination of whether there is criminal liability[2] is a question of fact, we confine our opinion only to whether "complimentary service" includes complimentary food and beverage.
L. 2007, Ch. 110, § 31(d) states:
 "No state or local official shall solicit or accept, directly or indirectly, any complimentary service or discount from any person submitting a proposal for a lottery gaming facility or racetrack gaming facility, or from any lottery gaming facility manager or racetrack gaming facility manager, which such official knows or has reason to know is other than a service or discount that is offered to members of the general public in like circumstances."[3]
Unfortunately, the above italicized phrase was not one of the terms defined in § 31.[4] However, it has been suggested that "complimentary service" does not include food and beverages because other Kansas statutes addressing conflicts of interest[5] use the term "hospitality" to include food and beverages. In essence, it is argued that food and beverages are a subset of "hospitality" and that if the legislature had wanted to prohibit public officials from accepting complimentary food and beverages from a person submitting a proposal for a lottery gaming facility, § 31(d) would have prohibited the acceptance of any "hospitality." Thus, it is argued that the phrase "complimentary service" should be interpreted to exclude "hospitality" (i.e. food and beverages).
In interpreting § 31(d), we apply a cardinal rule of statutory construction which is the presumption that the legislature intended to use words in their ordinary and common meaning.[6] "Service" has many meanings depending upon the context but here the context is an "act of assistance or benefit; favor."[7] The common meaning of "complimentary" is "given free to repay a favor or as an act of courtesy."[8] Clearly, "complimentary service" is broad enough to include providing a free meal.
Our interpretation of "complimentary service" is consistent with the history of Section 31.[9] The language in § 31 of KELA first appeared in the final version of a conflicts of interest provision in a prior gaming bill that was not enacted into law, § 31 of 2006 SB 587.[10]
According to the Revisor of Statutes, the language in § 31 of 2006 SB 587 was adopted almost verbatim from a New Jersey conflicts of interest statute dealing specifically with casinos.[11] This statute operates in conjunction with the New Jersey Casino Act,[12] which defines "complimentary service" as "[a] service or item provided at no cost or at a reduced price. . . ."[13] Additionally, junkets sponsored by casinos are prohibited from offering or providing "any complimentary services, . . . unless the complimentary consists of room, food,beverage or entertainment expenses. . . ."[14] Under New Jersey regulations, casinos must file a report separating the complimentary services or items provided "into categories for rooms, food,beverage, travel and other services."[15] Thus, under New Jersey law, the term "complimentary service" includes food and beverage.
Moreover, the New Jersey Supreme Court has addressed the purpose of its conflicts of interest statute dealing specifically with casinos:
 "The current amendment to the Conflicts of Interest Law deals specifically with the casino gambling business. As a supplement of the Casino Control Act, as well as the Conflicts of Interest Law, it seeks further to sanitize casino gambling and its potentially corrupting effect upon government. Gambling is an activity rife with evil, so prepotent its mischief in terms of the public welfare and morality that it is governed directly by the Constitution itself. N.J. Const. (1947), Art. IV, § 7, par. 2. As expressed in the Casino Control Act, which implements the Constitution's gambling clause it is the pronounced policy of this State to regulate and control the casino industry with the utmost strictness to the end that public confidence and trust in the honesty and integrity of the State's regulatory machinery can be sustained. [Citation omitted.] This public policy calls for standards controlling the conduct of the State's officials and public employees in dealing with casino entities. The legitimacy of these governmental concerns, reflected in the current New Jersey Conflicts of Interest Law, cannot be doubted and impel the strongest deference and support on the part of the judicial branch of government."[16]
The New Jersey Supreme Court continued: "We are concerned not only with impropriety, but also with its appearance, which is always more subtle than impropriety itself."[17]
The New Jersey Supreme Court's interpretation is valuable because where a statute of another jurisdiction has been judicially construed before its adoption in Kansas, we assume that the statute as judicially construed was adopted.[18] In other words, we assume that, like the New Jersey statute, the Kansas conflicts of interest provision was enacted "to sanitize" Kansas gaming in order to eliminate not only actual conflicts of interest but also appearances of impropriety involving public officials and casino interests. With such a stringent purpose, a broad interpretation of "complimentary service" in section 31(d) is appropriate.
We are aware that other Kansas conflict of interest statutes prohibit state officials from soliciting or accepting any "special discount, favor, hospitality or service from individuals who may want to curry favor. For example, K.S.A. 46-236 states:
 "No state officer . . . shall solicit any . . . gift, loan . . . favor, hospitality, or service from any person known to have a special interest, under circumstances where such officer . . . knows or should know that a major purpose of the donor . . . could be to influence the performance of official duties of such officer. . . ."[19]
Similarly, K.S.A. 46-237(a) states:
 "[N]o state officer . . . shall accept . . . any (1) . . . gift, loan . . . favor, hospitality or service having an aggregate value of $40 or more in any calendar year . . . from any one person known to have a special interest, under circumstances where such person knows . . . that a major purpose of the donor is to influence such person in the performance of their official duties. . . ."[20]
"Hospitality" as used in these statutes includes food and beverages.[21] Accordingly, it is arguable that "hospitality" (i.e. food and beverages) provided to a public official is different from a "service" provided to such official and, thus, "service" would not include food and beverages.
However, KELA appears to take a more conservative stance by prohibiting any kind of "service" that would create any appearance of undue influence upon a state or local official, including "hospitality." For example, K.S.A. 74-8716 has, since the inception of the lottery in 1987, prohibited members of the Lottery Commission and its employees from accepting "any . . . gift, loan . . . special discount, favor orservice, or hospitality other than food and beverages" from lottery retailers and certain lottery service providers. This statute was amended by KELA[22] to add an additional stricture on Commission members and employees accepting "any compensation, gift, loan, entertainment, favor or service" from lottery gaming facility managers and others associated with providing casino-type services. Had the legislature not been concerned with casinos providing "hospitality" to Lottery Commission members and employees, it could have included a provision similar to the older provision exempting food and beverages. The fact that the legislature did not do so leads us to believe that it intended to impose a stricter standard of conduct on state and local officials.
While we recognize that "complimentary service" is very broad, the Kansas appellate courts have concluded that where the legislature has "unambiguously determined the size of the mesh in the net, the fact that unintended varieties of fish may pass through that mesh has little bearing on anything."[23] If the legislature is comfortable that state and local officials will not be swayed by free meals, it can amend § 31 to exclude food and beverages from the ambit of "complimentary service." Until such time, it is our opinion that "complimentary service" in § 31(d) of KELA includes complimentary food and beverage.
Sincerely,
Paul J. Morrison Attorney General
Janet L. Arndt Assistant Attorney General
[1] L. 2007, Ch. 110.
[2] L. 2007, Ch. 110, § 31(f) (willful violation is a class A misdemeanor offense).
[3] Emphasis added.
[4] Section 31(a) defines "state or local official" and "affiliated person."
[5] See K.S.A. 41-206 (office of alcoholic beverage control), 46-236,46-237, 46-269, and 46-271 (State Governmental Ethics Law).
[6] In re Doe, 19 Kan.App.2d 204, 209 (1994).
[7] Webster's II New Riverside University Dictionary 1066 (1988).
[8] Id. at 291.
[9] See In re Tax Application of Lietz Constr. Co., 273 Kan. 890, 898
(2002) (to determine legislative intent, we can consider not only the language used in statute but also its historical background and purpose).
[10] New section 31 was added on the Senate floor. Journal of the Senate, 1238 (March 16, 2006). It was also included in another gaming bill, 2007 H.B. 2055.
[11] N.J.S.A. 52:13D-17.2(f) states: "No person shall solicit or accept, directly or indirectly, any complimentary service or discount from any casino applicant or licensee which he knows or has reason to know is other than a service or discount that is offered to members of the general public in like circumstance."
[12] Greenberg v. Kimmelman, 494 A.2d 294, 297 (1985).
[13] N.J.S.A. 5:12-14a.
[14] N.J.S.A. 5:12-102(m)(1). Emphasis added.
[15] N.J.A.C. 19:45-1.9(d). Emphasis added.
[16] Greenberg, 494 A.2d at 298-99 (citing Knight v. Margate,431 A.2d 833,842 [1981]) (conflicts of interest law precludes judge's spouse from being employed by casino).
[17] Greenberg, 494 A.2d at 299.
[18] Edgington v. City of Overland Park, 15 Kan. App. 2d 721, 728
(1991).
[19] Emphasis added.
[20] Emphasis added.
[21] K.S.A. 46-237(d); K.S.A. 46-269(b); K.S.A. 46-271.
[22] K.S.A. 74-8716, as amended by L. 2007, Ch. 110, § 46(f). Emphasis added.
[23] Williams v. Lawton, 170 P.3d 414, 423 (Kan.App. 2007).